### ROBERTS v. EATON et al.

United States District Court,
S. D. New York.

Dec. 15, 1953.

Judgment Affirmed April 5, 1954.
See 212 F.2d 82.

Henry H. Shepard, New York City, for plaintiff, Murray C. Bernays, Ellis J. Freedman, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants, Joseph S. Eaton, Jerome A. Eaton, Miriam Eaton Girard, Lillian K. Eaton [wife of Joseph S. Eaton] Oscar Eaton, Lillian Eaton [wife of Oscar Eaton], Herbert A. May and Philip A. Batchker, Inzer B. Wyatt, Wm. Ward Foshay, Francis Elwood Barkman, New York City, of counsel.

GODDARD, District Judge.

This is a motion by defendants for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, Title 15 U.S.C.A. § 78p(b), to recover for the Old Town Corporation [later referred to as Old Town] an alleged profit realized by defendants from an alleged purchase and sale of the corporation's stock within a period of less than six months.

No material facts are disputed.

The plaintiff was president of Old Town from April 14, 1953 to May 25, 1953, and he is a holder of 100 shares of Old Town common stock. There are outstanding, 320,402 shares of common stock, and 320,402 shares of preferred.

The moving defendants, Joseph S. Eaton, Philip A. Batchker, Herbert A. May, were directors, and Jerome A. Eaton was an officer, of Old Town during the relevant period. The other moving defendants were neither officers, directors, nor 10% stockholders.

The Old Town enterprise was begun by Joseph S. Eaton and his wife, Lillian K. Eaton. In 1917, it was incorporated under the laws of New York with an original capitalization of $2,500, represented by 25 shares of $100 par value, all owned by Mr. and Mrs. Eaton. The business prospered and its capitalization increased as Eaton put back the profits into the business as additional capital was required. Over the years the Eatons made gifts of Old Town stock to their children, Jerome and Miriam, defendants in the suit at bar, and to other members of the family. In 1947, Old Town had outstanding 300,000 shares of common stock of $5 par value, all except a few shares owned by the Eatons. In that year the Eatons sold 140,900 of their shares to the public.

In 1951, the Old Town common stock was registered on the New York Curb Exchange. At that time, the corporation's annual sales exceeded $5,000,000.

In 1952, negotiations were entered into by the Eaton family for the sale of their stock as Joseph Eaton wished to retire and take a less active part in the management of the business, and to diversify the family's investments.

In the latter part of 1952, a reclassification of the Old Town stock was proposed. In November and December, 1952, meetings of the directors were held and they recommended, for adoption by the stockholders, the reclassification of its then outstanding 320,402 shares of common stock of $5 par value, into 320,402 shares of common stock of $1 par value and 320,402 shares of 40¢ cumulative preferred stock of $7 par value.

The directors caused to be sent to each stockholder a notice of a special stockholders' meeting together with a proxy statement setting forth in detail the information concerning the proposed reclassification and also the negotiations by the Eatons for the sale of their stock. At that time, the Eaton family owned 45.9% of the outstanding common.

At the stockholders' meeting on December 30, 1952, the reclassification was authorized by a vote of more than two-thirds of the outstanding stock [78% of the outstanding shares, held by 675 shareholders, were voted in favor of the reclassification; only .85%, held by 23 stockholders opposed it]. Plaintiff, himself, voted for the reclassification.

The Amendment of the Certificate of Incorporation was filed with the Secretary of State of New York, on January 12, 1953. A letter was sent to all stockholders advising them that the reclassification had become effective; that no exchange of stock certificates was necessary; that the outstanding certificates thereafter represented common stock of $1 par value, and that certificates for their preferred stock were enclosed.

On February 2, 1953, the moving defendants, with the exception of Batchker, entered into contracts to sell their common stock to James H. McGraw, and

members of his family, and to sell their preferred stock to two life insurance companies and an investment company.

Batchker, in February and March, 1953, sold 2,600 shares of common and 3,000 shares of preferred on the American Stock Exchange.

With the sale of the Eaton's interests, new officers and directors were elected. Plaintiff was elected executive vice president on February 10, 1953. On April 14, 1953, he was elected a director and president of the corporation, and on May 25, 1953, he was removed as president. Soon thereafter, he brought suit against Old Town for breach of contract and against McGraw for alleged fraud and breach of contract. This was followed by a written demand on Old Town to institute an action under Section 16(b) against defendants.

At this time, neither the Eaton family, nor any other defendant, controlled the Board of Directors. The then directors retained independent counsel to advise them, securing the services of the law firm of Burns, Currie, Rich & Rice [one member of which had formerly been General Counsel of the Securities & Exchange Commission, and another partner had been employed by the Commission as counsel.] In a writ-

ten opinion of that firm on August 13, 1953, the directors were advised that plaintiff's demand to institute suit should be denied, as the reclassification could not be considered a "purchase" within Section 16(b) and so there was no "purchase" and "sale" within a period of less than six months. The corporation refused plaintiff's demand, none of the defendants participating in that decision. Thereupon, plaintiff commenced this action, on October 2, 1953.

Plaintiff contends that the reclassification by the Amendment of the Certificate of Incorporation resulted in a "purchase" of the reclassified stock and that the sale of stock within six months of the reclassification made the defendants liable under Section 16(b).

As the pertinent facts are not in dispute, the question is whether the statutory reclassification of the outstanding stock constituted a "purchase" by the stockholders, of the reclassified stock.

The relevant portions of Section 16 (b) and Section 35 of the Stock Corporation Law of New York, McK.Consol. Laws, c. 59, are set forth in the margin.[1] Section 37 of the Stock Corporation Law requires that any reclassification of outstanding shares be authorized by vote, in person, or by proxy, of

---

1. Section 16, Securities Exchange Act of 1934

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer * * * within any period of less than six months, * * * shall inure to and be recoverable by the issuer, * * *."

Section 35 of the Stock Corporation Law of New York

"2. The certificate of incorporation of any stock corporation may be amended to effect one or more of the following changes:

*      *      *      *      *

"(C) To change its capital stock, or its shares, or the par value thereof, or the number thereof included in any class or series of a class, or the provisions

governing its capital, including a change for any or all of the following purposes:

*      *      *      *      *

"(4) to reduce the par value of any previously authorized shares, whether issued or unissued, that have a par value;

"(5) to change all or any of its previously authorized shares with or without par value, issued or unissued, into the same or a different number of shares of any class or classes or any series of any class or classes, either with or without par value, or into the same or a different number of both shares with par value and shares without par value, of any classes or series of any class or classes;

*      *      *      *      *

3. Shares of any stock corporation may be classified or reclassified by amendment of the certificate of incorporation, pursuant to subparagraph four or subparagraph five of paragraph (C), or paragraph (D), or paragraph (H), of subdivision two of this section. * * *"

the holders of record of two-thirds of the outstanding shares.

Section 3(a) (13) of the Securities Act of 1934 defines "purchase" as including "any contract to buy, purchase, or otherwise acquire."

■ The purpose of Section 16(b) was to protect the "outside" stockholders from short-term speculation by "insiders" with advance information.

No case has been cited, nor do I find any, which determines whether a statutory reclassification of stock involves a "purchase" within the meaning of Section 16(b).

In Shaw v. Dreyfus, 2 Cir., 1949, 172 F.2d 140, certiorari denied 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719, a corporation had issued to its common stockholders rights to subscribe at $50 per share for additional common stock on the basis of one share for each ten shares held. The court held that the receipt of these warrants was not a "purchase" by the stockholders within the intendment of Section 16(b). Judge Swan, writing for the court, said 172 F.2d at page 142:

> " 'Inside' information which the directors may have cannot possibly be used to the detriment of other stockholders in voting to grant rights to all stockholders of record in proportion to their existing holdings; all are treated equally. Their preemptive right to be offered the new stock and on equal terms inheres in their original shares and is essentially analogous to a stock dividend."

■ In the case at bar, the defendants had owned their stock for several years. The sale cannot possibly come within the provisions of Section 16(b) unless it can be found that they "purchased" their holdings anew upon the reclassification. I find it difficult, to say the least, to place such an interpretation on the transaction.

> "The popular or accepted import of words furnishes the general rule for the interpretation of statutes.

The generally understood meaning of 'purchase' is to acquire something by one's own act or agreement for a price." Shaw v. Dreyfus, supra, 172 F.2d at page 142.

The corporate shareholders acquired no additional interest in the corporation as a result of the reclassification. It was merely a division of their existing interest. Each stockholder retained what he had held all the while, in the same proportion, but in a somewhat different form.

No consideration passed from the defendants, or any other shareholder, to the corporation. The capital and surplus of Old Town, totalling $3,712,358.08, was the same after as before reclassification, though accounted for in a different manner on the corporate books.

Each shareholder held before and after reclassification only what their inherent rights as shareholders entitled them to receive. The Stock Corporation Law of New York provides for reclassification of its stock by the corporate body. It is a corporate right, effectuated by a corporate act, the vote of at least two-thirds of the shareholders. Each stockholder had no choice but to accept the decision of the corporate body as binding every stockholder, and it affected each equally.

> "That all 'acquisitions' are not 'purchases' and all 'disposals' not 'sales,' within the meaning of Section 16(b) seems demonstrable, and in accord with the definitions contained in Section 3(a) (13), 15 U.S. C.A. § 78c(a) (13) and Section 3 (a) (14)." Truncale v. Blumberg, D.C., 80 F.Supp. 387, at page 390.

To say that any Old Town shareholder "purchased" his stock upon the reclassification is to twist the word "purchase" beyond all semblance of recognized meaning. The shareholders performed no act, made no agreement, paid no consideration for the reclassified stock. They received it as a result of the resolution approved by the corporation and it represented only what they had held prior to reclassification.

A reclassification in effect resembles a stock dividend, or a stock split. It affords no opportunity for a director to use inside information he may have to the detriment of other stockholders for it necessarily treats all equally. It cannot be effected without stockholder approval, the vote of two-thirds of the shares being necessary, under the statute. Thus, the policy of Section 16(b) of protecting the other shareholders need not be invoked.

The motion by defendants for summary judgment is granted. Settle order on notice.