SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

STERLING PRECISION CORPORATION
and the Equity Corporation,
Defendants.

66 Civ. 3052.

United States District Court
S. D. New York.

July 7, 1967.

Philip A. Loomis, Jr., Gen. Counsel,
Walter P. North, Associate Gen. Counsel,
Washington, D. C., for plaintiff Securi-
ties and Exchange Commission.

Paul, Weiss, Rifkind, Wharton & Gar-
rison, New York City, for defendant
Sterling Precision Corp., Friedman,
Koven, Salzman, Koenigsberg, Specks &
Homer, Chicago, Ill., of counsel.

Palmer, Serles, Delaney & Shaw, New
York City, for defendant The Equity
Corp., Arnold & Porter, Washington, D.
C., of counsel.

McLEAN, District Judge.

This is an action by the Securities and
Exchange Commission to enjoin defend-
ant Sterling Precision Corporation
(Sterling) from redeeming its deben-
tures and preferred stock held by de-
fendant Equity Corporation (Equity),
and for a judgment determining that the
redemption which has already occurred
is void. Equity is a closed-end nondi-

versified investment company registered with the Commission under the Investment Company Act of 1940. At the time of the redemption in August 1966, Sterling was an "affiliated person" of Equity within the meaning of Section 2(a) (3) of the Act (15 U.S.C. § 80a–2(a) (3)). Plaintiff claims that the redemption, effected without prior approval of the Commission, violated Section 17(a) (2) of the Act (15 U.S.C. § 80a–17(a) (2)) which makes it unlawful for an affiliated person of a registered investment company "knowingly to purchase from such registered company * * * any security or other property (except securities of which the seller is the issuer)." *

Plaintiff moves under Rule 12(c) for judgment on the pleadings. Defendant Sterling moves for summary judgment. The primary question is whether a redemption of securities pursuant to the terms upon which they were originally issued, is a "purchase" within the meaning of Section 17(a) (2). The facts relating to that question are undisputed.

The Act does not define the word "purchase." Webster says that it means "the acquisition of title to, or property in, anything for a price; buying for money or its equivalent." Webster, International Dictionary, 2015 (2d ed. 1957).

A redemption could be said to be a purchase in this broad sense. Sterling acquired title to the debentures and the preferred stock and paid money in return. But this does not solve the problem. The question is whether a redemption is the kind of purchase which Congress intended to prohibit by Section 17 (a) (2).

It is undeniable that a redemption is at best a specialized type of purchase. One does not naturally think of it as synonymous with buying. In this case the securities which Sterling redeemed were issued ten years before. The right to redeem in the future, at Sterling's

option, was defined at that time. No new negotiation occurred and no new bargain was made between Sterling and Equity when in 1966 Sterling saw fit to exercise that right.

The distinction between a purchase and a redemption is well recognized in state corporation statutes, including the statutes of Delaware, where Sterling was incorporated, and those of New York, where Sterling's principal place of business is located. Del.Code Ann. tit. 8 § 243, N.Y.Bus.Corp.Law, McKinney's Consol.Laws, c. 4, §§ 512–515.

More important, the distinction is recognized in the Investment Company Act itself. Several sections of the Act refer both to purchases and redemptions.

See Section 1(a) (1) (15 U.S.C. § 80a–1(a) (1)) Section 7(a) (2) (15 U.S.C. § 80a–7(a) (2)) Section 7(b) (2) (15 U.S.C. § 80a–7(b) (2)) Section 18 (e) (2) (15 U.S.C. § 80a–18(e) (2)) Section 22 (15 U.S.C. § 80a–22).

Yet Section 17(a) (2) refers only to purchase. Where Congress has been careful to use both words when it intended to cover both types of transactions, it is hard to believe that it meant to cover both types in Section 17(a) (2), where it used only one word.

Decisions construing the word "purchase" for the purposes of Section 16(b) of the Securities Exchange Act of 1934 have been careful to restrict that word to its normal meaning. They have declined to broaden it to include a conversion of preferred stock into common stock (Petteys v. Butler, 367 F.2d 528 (8th Cir. 1966), cert. denied, 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 545 (1967), Blau v. Max Factor & Co., 342 F.2d 304 (9th Cir. 1965), cert. denied, 382 U.S. 892, 86 S.Ct. 180, 15 L.Ed.2d 150 (1965)); or a reclassification of stock (Roberts v. Eaton, 212 F.2d 82 (2d Cir. 1954), cert. denied, 348 U.S. 827, 75 S.Ct. 44, 99 L.Ed. 652 (1954)); or the receipt of rights (Shaw v. Dreyfus, 172 F.2d 140 (2d Cir. 1949), cert. denied,

---

* The Commission has power to approve such a purchase under Section 17(b) of the Act. No request for such approval was made by defendants.

337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949)). These decisions offer some guidance here.

Plaintiff urges that the purpose of the Act is controlling. Cf. Blau v. Lamb, 363 F.2d 507 (2d Cir. 1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967); Willheim v. Murchison, 342 F.2d 33, 42 (2d Cir. 1965), cert. denied, 382 U.S. 840, 86 S.Ct. 36, 15 L.Ed.2d 82 (1965).

■ It may be assumed that the fundamental purpose of the statute is to prevent unsupervised dealing between an investment company and its controlled affiliate. But it does not necessarily follow that Congress intended to prevent every possible type of such dealing. Put another way, the existence of an overall benificent purpose does not necessarily require the conclusion that the word "redemption" should be read into Section 17(a) (2) where it does not in fact appear.

■ The unsupervised self-dealing which Congress intended to prevent would seem to be dealing of the sort which involves negotiations or bargaining between the two companies. A redemption of securities does not involve such dealing. Clearly, the dealing between the investment company and its affiliate in a redemption is minimal compared with the dealing involved in a true purchase. Actually, any dealing, in the sense of bargaining, could have occurred only when the securities were originally issued. At that time there may have been no affiliation whatever between the two companies, and hence no possibility of self-dealing, or if there was affiliation, the Commission may have approved the issuance of the securities. Indeed, that appears to be what occurred in this case. When the debentures were issued, Sterling was not an affiliate of Equity. When Sterling issued its preferred stock, the issuance was approved by the Commission.

Plaintiff points to the fact that Sterling redeemed only the debentures and preferred stock held by Equity. It did not redeem those securities held by others. Plaintiff also emphasizes that it was necessary for Sterling to obtain the consent of the other debenture holders to waive their rights to a redemption of the debentures and their consent to a redemption of the preferred stock before Sterling could proceed to redeem the debentures and preferred stock held by Equity. Of course, this means only that there were necessarily negotiations between Sterling and the other debenture holders. It does not mean that there were any negotiations between Sterling and Equity. It does not make the transaction between Sterling and Equity any the less a redemption.

■ Nevertheless, I have given considerable thought to this aspect of the case. It is possible that in August 1966 Equity exercised its control over Sterling to cause Sterling to redeem the securities owned by Equity, and that in so doing, Equity may have acted to further its own interests rather than Sterling's. Sterling's denial of the truth of this suspicion merely raises a question of fact which cannot be considered on this motion. The circumstance present here, i. e., that Sterling did not redeem its securities pro rata, may perhaps explain why plaintiff has chosen this case to test out the meaning of Section 17(a) (2). It supports the view that this may be a case where supervision of the redemption by the Commission would have been desirable in the public interest. I believe, however, that this circumstance, which would seem to be unusual, does not justify the conclusion that Congress foresaw such a possibility and therefore intended that the word "purchase" in Section 17(a) (2) should include a redemption. I cannot escape the contrary conclusion that if Congress had meant to include redemptions, it would have said so. On the particular point here in issue, the overall purpose of the statute does not seem to me sufficiently strong to override the specific language of Section 17(a) (2).

I hold, therefore, that the Act did not require the obtaining of prior approval of the Commission to the redemption of

Sterling's debentures and preferred stock, and that that redemption did not violate Section 17(a) (2). This conclusion makes it unnecessary to consider defendant's other contentions.

Plaintiff's motion is denied. Defendant Sterling's motion for summary judgment is granted.

So ordered.