### SHAW v. DREYFUS et al.
No. 119, Docket 21167.

United States Court of Appeals Second Circuit.

Jan. 19, 1949.

CLARK, Circuit Judge, dissenting.

———◆———

Morris J. Levy, of New York City, for appellant.

Shearman & Sterling & Wright, of New York City (John A. Wilson, Clifford M. Bowden and Michael J. DeSantis, all of New York City, of counsel), for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, *Circuit Judge.*

This appeal involves the applicability to undisputed facts of section 16(b) of the Securities Exchange Act of 1934 of which the relevant portion is printed in the margin. [1] Celanese Corporation of America, a Delaware corporation, pursuant to a resolution of its board of directors, issued to its common stockholders of record warrants evidencing rights to subscribe, at $50 per share, for additional shares of common stock on the basis of one share for each ten shares held. The warrants were mailed on October 9, 1945 and would expire unless exercised on or before October 24, 1945. The defendant Dreyfus was an officer and director of the corporation and, as a stockholder of record, he received a large number of rights. Part of these rights he sold through a brokerage firm, realizing from the sale $5,915.14; part he exercised, receiving thereby 3,000 shares of common stock. Of the shares so acquired he made gifts of 1460 shares between November 12, 1945 and January 6, 1946. He received no consideration from any of the donees and none of them transferred any of the stock given them within six months from the date of the gift.

▆▆▆ The plaintiff is an owner of common shares who brought the present suit in behalf of the corporation after her request that it sue Dreyfus to recover his "profit" had been refused. One count of the complaint seeks recovery of the sum realized by Dreyfus from his sale of rights; another seeks to compel him to account for the difference between the cost to him ($50 per share) of the shares given away and the market price on the Exchange on dates when the gifts were made. Both parties having moved for summary judgment on the pleadings and affidavits, the plaintiff's motion was denied and the defendants' motion granted. From the judgment of dismissal the plaintiff has appealed.

---

[1] 15 U.S.C.A. § 78p(b): "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer * * * within any period of less than six months * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity, in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request * * *."

The appellant contends that a stockholder's receipt of rights by virtue of the corporate resolution was a "purchase" of such rights within the intendment of § 16(b). We think otherwise. The purpose of the section, as this court said in Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, 987, certiorari denied 332 U.S. 761, 68 S.Ct. 64, was "to protect the outside stockholders against at least short-swing speculation by insiders with advance information." "Inside" information which the directors may have cannot possibly be used to the detriment of other stockholders in voting to grant rights to all stockholders of record in proportion to their existing holdings; all are treated equally. Their preemptive right to be offered the new stock and on equal terms inheres in their original shares and is essentially analogous to a stock dividend.[2] "Purchase" is not an apt word to describe the receipt by a stockholder of shares representing a stock dividend or of warrants representing his preemptive right to subscribe for new shares. Nor will the purpose of the statute be defeated by refusing so unusual a meaning to the word.

■■ The appellant refers to section 3 (a) (13) of the Act, 15 U.S.C.A. § 78c(a) (13), which defines "purchase" as follows:

"The terms 'buy' and 'purchase' each include any contract to buy, purchase, or otherwise acquire."

But we do not think this definition aids her contention. The popular or accepted import of words furnishes the general rule for the interpretation of statutes.[3] The generally understood meaning of "purchase" is to acquire something by one's own act or agreement for a price.[4] Dreyfus performed no act, made no agreement, paid no consideration for the receipt of his rights. The rights were not themselves a contract to acquire shares; they were mere offers by the corporation,[5] which the offeree by acceptance could convert into contracts to purchase; but unless he did so, they remained mere offers. We agree with the district court that Dreyfus did not "purchase" his rights on October 9th, and therefore his sale of some of them before their expiration on October 24th was not a transaction to which § 16(b) was applicable.

■■ The 3,000 shares acquired by the exercise of rights was a "purchase," and the question here is whether Dreyfus realized "profit" from "any purchase and sale" when he made gifts of part of the purchased shares. Section 3(a) (14) of the Act, 15 U.S.C.A. § 78c(a) (14), provides that

"The terms 'sale' and 'sell' each include any contract to sell or otherwise dispose of."

Certainly bona fide gifts, as these were conceded to be, are not within the accepted meaning of "sales"; nor do they involve "any contract to sell or otherwise dispose of" the property given. In Park & Tilford v. Schulte, 2 Cir., 160 F.2d 984, 987, we said that "The Act certainly applies as well to executed acquisitions as to executory contracts to acquire." But the acquisition there under consideration was one similar to a purchase. Schulte exercised an option to convert his preferred stock into common stock. Similarly, we would hold that the Act applies as well to executed dispositions as to executory contracts to dispose, provided the disposition is similar to a sale. But a bona fide gift is not a transaction similar to a sale. Truncale v. Blumberg, D.C.S.D.N.Y., 80 F.Supp. 387, 389. Nor is it within the evil at which the statute was aimed. The statute authorizes the corporation to recover profits realized by "insiders" from a "short swing" transac-

[2] See Miles v. Safe Deposit & Trust Co., 259 U.S. 247, 252, 42 S.Ct. 483, 66 L.Ed. 923; Stokes v. Continental Trust Co., 186 N.Y. 285, 297, 78 N.E. 1090, 12 L.R.A.,N.S., 969, 9 Ann.Cas. 738; Macy v. Helvering, 2 Cir., 82 F.2d 183, 185.

[3] Maillard v. Lawrence, 16 How. 251, 261, 14 L.Ed. 925; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct.

211, 76 L.Ed. 484; Woolford Realty Co. v. Rose, 286 U.S. 319, 327, 52 S.Ct. 568, 76 L.Ed. 1128.

[4] Johnston v. United States, 9 Cir., 145 F.2d 137, 138; Berger v. United States Steel Corp., 63 N.J.Eq. 809, 817, 53 A. 68.

[5] See Palmer v. Commissioner, 302 U.S. 63, 71, 58 S.Ct. 67, 82 L.Ed. 50.

tion. Whether recovery could be had from either Dreyfus or his donee had the stock been sold within six months we need not say, but certainly so long as neither he nor his donee made any profit within six months period no unfair use of inside information, within the intendment of the statute, has occurred. It is plain that Dreyfus realized no profit by making the gifts. We see no justification for construing "profit realized from any purchase and sale" to mean merely emotional gratification resulting from making the gift. See Statutory Inhibitions upon Unfair Use of Corporate Information by Insiders, 95 U. of Pa. L. Rev. 468, 485.

Judgment affirmed.

CLARK, Circuit Judge (dissenting).

While these are obviously borderline cases, yet they must be decided in their logical setting in the light of what has gone before in the construction of the statute. And unless we are to say rather arbitrarily that, since we must stop somewhere in a generous interpretation of the Congressional purpose, we shall stop right here, I do not think that this is a good place to draw the line. For the differences between these transactions and those already determined to be within the statute do not seem to me sufficient either logically or practically to justify a distinction here. Under the statute the term "security" includes the "right to subscribe to or purchase" stock, "buy" and "purchase" each include a contract "to buy, purchase, or otherwise acquire," and "sale" and "sell" each include a contract "to sell or otherwise dispose of" a security. 15 U.S.C.A. § 78c(a) (10), (13), (14). And "contract" is broad enough to include an "executed acquisition." Park & Tilford, Inc. v. Schulte, 2 Cir., 160 F. 2d 984, 987, certiorari denied Schulte v. Park & Tilford, Inc., 332 U.S. 761, 68 S.Ct. 64. The statutory language is therefore inclusive enough to reach these transactions.

When we turn to the purpose of the legislation, to wring the profit out of short-swing transactions by insiders, I should think this same result was indicated. If these transactions are without the scope of the Act, we have an area of considerable inducement to the insider to play for the short swing. When, indeed, the insider is a person of ample means and large public interests (as "insiders" I fancy are prone to be), then the inducements here may be as substantial as, if not more so than, in the more prosaic cases heretofore decided. If one has at hand so ready a means of recompensing faithful personal service at home or in the office, or of making the ties of personal loyalty of company executive officers yet stronger than before, or, indeed —though this case is not before us—of remembering bountifully one's favorite charities, I should think the necessity of doing so only through the use of the stock itself, instead of the money which might be realized therefrom, was one which could be accepted with considerable tranquility. So inside advance knowledge of an approaching issue of stock with grant of share-rights might point to the retention of stock already owned or the purchase of more, while the ordinary investor remains ignorant of the attractive possibilities about to open before him. In this instance, in fact, the gain is directly in money received on sale of the rights; if care must be taken to avoid direct subscription to the stock followed by sale—since that is within the statute under Park & Tilford, Inc. v. Schulte, supra—yet that means simply a quicker return on a smaller investment. In all these instances the principle seems to me the same; the insider has an obvious and attractive advantage over others, unless all are held to be within the statute.

Of course computation of the amount of profit may be slightly more difficult than in the cases of direct purchase and sale. But I cannot see that it presents any insuperable difficulties. It seems to me but the ordinary task of valuing the security at its fair market price at the crucial dates of its acquisition and disposition. I would reverse and remand for that purpose here.