## WALET v. JEFFERSON LAKE SULPHUR CO.

### No. 14175.

United States Court of Appeals
Fifth Circuit.

March 11, 1953.

Rehearing Denied April 4, 1953.

James G. Schillin, New Orleans, La., for appellant.

Eberhard P. Deutsch, New Orleans, La. (Deutsch, Kerrigan & Stiles and René H. Himel, Jr., New Orleans, La., of counsel), for appellee.

Myer Feldman, Atty., Securities Exchange Commission, Roger S. Foster, Gen.

434

Counsel, Washington, D. C., both · for amicus curiae.

Before HOLMES, BORAH, and RUSSELL, Circuit Judges.

HOLMES, Circuit Judge.

This action was brought under Sections 16(b) and 27 of the Act of June 6, 1934, chapter 404, 48 Stat. 896 and 902, 15 U.S.C. A. §§ 78p(b) and 78aa. Said statute is known as the Security Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., and will be referred to herein as the Act. The plaintiff is a New Jersey corporation; the defendant is a citizen of Louisiana; federal jurisdiction of this controversy, therefore, rests both upon a federal question and diversity of citizenship.

Plaintiff's common stock, which is an equity security as defined in section 3 of the Act, is registered, as contemplated by section 12 thereof, on the New York Curb Exchange, a national securities exchange duly registered with the Securities and Exchange Commission pursuant to section 6 of the Act. During the two years preceding the filing of this action, the appellant (defendant below), president and a director of appellee (plaintiff below) throughout said period realized from purchases and sales of plaintiff's common stock the sum of $36,-677.79, for which amount, and for all costs, judgment was rendered in favor of the plaintiff and against the defendant in the court below, whence comes this appeal.

The appellant admits that, during the two-year period preceding the filing of the complaint in this cause, he was president and a director of the appellee; and admits that during a six-months period within said two years he realized an aggregate profit of $36,677.79 on purchases and sales of appellee's common stock. The certificates delivered for shares sold by him were not necessarily the same as the certificates for shares purchased during each of the six-months periods involved. The 1200 shares purchased by the appellant in November, 1950, were treasury shares bought from the corporation pursuant to an option which the appellee had, on November 16, 1950, granted appellant for extraordinarily meritorious services rendered to the corporation for about eight years, in order to give him the income-tax advantages contemplated by section 130A of the Internal Revenue Code, 26 U.S.C.A. § 130A.

The certificate for the shares sold and delivered by the appellant during November, 1950, did not include the specific shares acquired by him during that month under the above option. Each of appellant's transactions was concededly consummated by him in the utmost good faith, without any inside information whatever, and without any damage to the appellee or its shareholders as a result thereof. The appellant's first defense is that, since he was married, only one-half of any profits from the transactions in suit were realized by him, the other half having been realized by his wife under the community-property laws of Louisiana.

We think that the court below correctly rejected this contention, because the husband, under the law of Louisiana, is the head and master of the community and as such must be held accountable for his management thereof to the same extent as if it were his own. Any other rule would defeat the purpose of the statute here under consideration, at least in part, in community-property states. In such circumstances, federal policy must prevail over the vagaries in local laws. Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L. Ed. 424. For the Louisiana authorities and a fuller discussion of this point, we refer to the able opinion of the district judge, 104 F. Supp. 20, which is set forth in its entirety on pages 24 to 33 of the transcript.

The second and third defenses relate to the appellant's good faith, the absence of inside information, and the fact that the purchases and sales were not necessarily of the same shares of stock. These points have been considered and rejected in two opinions by the Second Circuit, in which it was held that the questions of good faith and of the identity of the shares were immaterial, and that, since all shares of a corporation's stock are alike and interchangeable, it is of no consequence whether those bought and sold are represented by the same certificates. Gratz v. Claughton,

2 Cir., 187 F.2d 46, certiorari denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Smolowe v. Delendo Corporation, 2 Cir., 136 F. 2d 231, certiorari denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. We concur in these decisions.

Section 3 of the Act, 15 U.S.C.A. § 78c, in defining the term security, expressly mentions treasury stock, whereas those words are not found in the definition of equity security in the same section. We think this omission lacks the significance that the appellant would attribute to it. Included in the definition of "equity security" is the generic phrase "stock or similar security", which embraces treasury stock; and, in any event, treasury stock by the very fact of its purchase and issuance ceases to be such and becomes outstanding or non-treasury stock.

With reference to the option to purchase treasury stock, we think that the appellee, in granting the option, should not be held to have waived the benefits of section 16(b) in the event that the option should be exercised so as to result in a profit to the appellant with respect to shares sold within six months of its exercise. Accordingly, the judgment appealed from is affirmed.

Affirmed.