WESTERN AUTO SUPPLY COMPANY,
Plaintiff,
and
Beneficial Finance Co., Intervener,
v.
GAMBLE-SKOGMO, INC., Defendant.
4-61 Civ. 326.

United States District Court
D. Minnesota,
Fourth Division.
April 9, 1964.

Armin M. Johnson, of Faegre & Benson, Minneapolis, Minn., appeared in behalf of plaintiff and intervener.

Edward J. Callahan, Jr., of Callahan & Callahan, Minneapolis, Minn. (Allen T. Rorem, Minneapolis, Minn., of counsel) appeared in behalf of defendant.

NORDBYE, District Judge.

This case arises under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), and was presented to the Court on a stipulation of facts.

As of January 1, 1960, the defendant, Gamble-Skogmo, Inc., was the beneficial owner of 1,256,044 shares of common stock issued by Western Auto Supply Company, a former Missouri corporation hereafter called Western Missouri. From January 1, 1960, to July 11, 1960, these holdings represented more than ten per cent of Western Missouri's only outstanding class of common stock. Prior to January 15, 1960, there was due and owing from Gamble-Skogmo to its Employees Profit Sharing-Stock Bonus Trust Fund, hereafter called the Trust Fund, the sum of $839,251.78. On January 15, 1960, the Gamble-Skogmo Executive Committee approved the purchase of 32,000 shares of Western Missouri common stock for the purpose of contributing them, or as much thereof as would be necessary, to the Trust Fund in order to satisfy Gamble-Skogmo's 1959 obligation. On January 21, 1960, Gamble-Skogmo purchased 32,000 shares of Western Missouri common stock at $32.-35 per share for $1,035,200 through Allen and Company, an investment securities dealer. On January 27, 1960, Allen and Company delivered to Gamble-Skogmo the required number of share certificates of Western Missouri bearing street names (not designated by Gamble-Skogmo) and endorsed in blank. Following the receipt of the stock, on January 28, 1960, Gamble-Skogmo caused 25,942 shares of this stock to be transferred to a nominee for the corporate trustee of the Trust Fund. In that the stock at the price purchased totaled $839,223.70, and the indebtedness to the Trust Fund was $839,251.78, a check for $28.08 was delivered to the Trust Fund trustee by Gamble-Skogmo so that the total amount due of $839,251.78 was obtained thereby. The remaining 6,058 shares of the 32,000 shares of Western Missouri thus purchased was then transferred to Gamble-Skogmo on the stock records of Western

Missouri. It should be mentioned that Gamble-Skogmo was not required to make its contribution to the Trust Fund in Western Missouri stock or any other stock, but it merely chose this method to make this voluntary contribution for the year 1959. With the 6,058 shares added to the 1,256,044 shares, Gamble-Skogmo owned 1,262,102 shares of Western Missouri stock on January 31, 1960. All of these shares were sold to the Beneficial Finance Co. on July 11, 1960, for a price of $36 per share, totaling $45,435,672. In the interim from January 31, 1960, to July 11, 1960, Gamble-Skogmo had received dividends on its Western Missouri stock totaling 70 cents per share. The stipulation of facts states that on July 28, 1961, Beneficial and Western Missouri agreed to merge into the former company. The merger was completed on October 27, 1961. On the same date, Beneficial sold all its right, title and interest in Western Missouri assets to Western Auto Supply Company, a Delaware corporation, hereafter referred to as Western Delaware.

On December 13, 1961, the President of Western Delaware wrote a letter to Gamble-Skogmo demanding an accounting of the profits realized on the 32,000 shares which it had purchased on January 27, 1960, including the dividends paid thereon. On December 18, 1961, Gamble-Skogmo paid Western Supply $22,111.70, the difference between the price it received and the price it paid for 6,058 shares of Western Missouri, but refused to make any payment on the 25,942 shares which it had delivered to the Trust Fund. It contended, and it is admitted, that these shares were contributed to the Trust Fund at the exact cost of $32.35 per share, which with its check for $28.08 made the exact contribution which it was required to make to the Trust Fund in accordance with the formula in the Trust Agreement. No payment was made on the dividends received by Gamble-Skogmo on the 6,058 shares.

Plaintiff and the intervener, hereafter referred to as the plaintiffs, are proceeding under Section 16(b) of the Securities Exchange Act of 1934, which provides:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

■ The defendant initially raises the question as to the right of these plaintiffs to institute this action. Plaintiffs' position is that the original Western Missouri cause of action under Sec-

tion 16(b) against the defendant was a chose in action which passed first to Beneficial by virtue of its merger with Western Missouri, and then by assignment by Beneficial of all of Western Missouri's assets to Western Delaware. That this right in an issuer corporation and in its stockholders is a chose in action seems clear. The Securities Exchange Act contains no provision governing the assignability or transferability of the rights of action contained in Section 16(b). This statute merely states that "Suit to recover such profit may be instituted * * * by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer." The term "issuer" is defined in Section 3(a) (8), 15 U.S.C. § 78c (8), of the Act:

> "The term 'issuer' means any person who issues or proposes to issue any security; except that with respect to certificates of deposit for securities, voting-trust certificates, or collateral-trust certificates, or with respect to certificates of interest or shares in an unincorporated investment trust not having a board of directors or of the fixed, restricted management, or unit type, the term 'issuer' means the person or persons performing the acts and assuming the duties of depositor or manager pursuant to the provisions of the trust or other agreement or instrument under which such securities are issued; and except that with respect to equipment-trust certificates or like securities, the term 'issuer' means the person by whom the equipment or property is, or is to be, used."

Defendant contends that the statutory pronouncement as to who may sue is clear and excludes one in the position of plaintiffs.

 That the merger statute of Missouri supports the plaintiffs' position that the right of action under Section 16(b) passed to Beneficial upon the merger of the two companies is evident from Missouri Revised Statutes of 1959,

§ 351.450, V.A.M.S., which in part provides:

> "When such merger or consolidation has been effected
>
> \* \* \* \* \* \*
>
> "(4) Such surviving or new corporation shall thereupon and thereafter possess all rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging or consolidating corporations; * * * and all and every other interest of or belonging to or due to each of the corporations so merged or consolidated, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, under the laws of this state vested in any of such corporations shall not revert or be in any way impaired by reason of such merger or consolidation. * * *"

 Section 16(b) must be considered as remedial in nature. Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300 (2 Cir. 1943), cert. den. 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446. And in view of the fact that the statute was drafted not only to protect the issuing corporation, but the public as well, a broad and liberal construction should be given to the question of the assignability of this chose in action. Consequently, it seems entirely sound to conclude that the statutory rights of Western Missouri, as well as those of its stockholders, became vested in Beneficial. It was the sole owner of the outstanding securities of Western Missouri and the only entity which could proceed under Section 16(b) when it sold all of Western Missouri's assets to Western Delaware. The bill of sale, according to Exhibit D attached to the stipulation of facts, conveyed all assets of every kind and nature possessed by Western Missouri. Here, the issuer no longer exists because of its merger with Beneficial and the sale of its assets to Western Delaware. The rights under Section 16(b)

are based upon property rights. They survived and were assignable. In any event, this Court concludes that where, in an action under Section 16(b) of the Securities Exchange Act, there is a merger of the issuing corporation with another and a subsequent assignment by the latter of all assets acquired thereby to a third corporation, and where the surviving corporation in the merger and the assignee of that corporation are joined as plaintiffs, there should be no question as to the rights vested in these plaintiffs to bring a Section 16(b) action as proper parties.

■ The objectives Congress sought to achieve through Section 16(b) are stated in the Act itself. The purpose was to remove "any profit" from stock transactions entered into by an insider on the basis of "unfair use of information" obtained by reason of its relationship to the issuer. Congress recognized that the dangers inherent in speculation by one with inside information in the securities of a corporation are serious. The 1934 report of the Senate Banking and Currency Committee stated:

"Among the most vicious practices unearthed at the hearings before the subcommittee was the flagrant betrayal of their fiduciary duties by directors and officers of corporations who used their positions of trust and confidential information which came to them in such positions, to aid them in their market activities. Closely allied to this type of abuse was the unscrupulous employment of inside information by large stockholders who, while not directors and officers, exercised sufficient control over the destinies of their companies to enable them to acquire and profit by information not available to others."

■ On the facts presented, there is no showing, however, that anyone profited from the purchase of the 25,942 shares and the subsequent transfer of them to the Trust Fund. But plaintiffs contend that the only material facts are that Gamble-Skogmo, within a six-month period, purchased 32,000 shares at one price and sold a number of shares equal in number at a higher price when it disposed of its entire holdings of some 1,262,102 shares to Beneficial. Plaintiffs urge in support of their position that they are not required to match stock certificates in applying the sanctions of Section 16(b). Relying heavily on Smolowe v. Delendo Corp., supra, they argue that the rule to be followed under these circumstances is that of "lowest price in and highest price out—within six months."

In Smolowe the court was struggling with the adoption of a rule which would prevent a circumvention of Section 16(b). There, the defendant, a director within the ambit of the Act, contended that the sale of the shares involved was made from a backlog of stock that he had held longer than six months. The court rejected the "first in, first out" rule and stressed that the object of the statute was "to squeeze all possible profits out of stock transactions and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty." The court went on to point out that, on the facts before it, "The only rule whereby all possible profits can be surely recovered is that of lowest price in, highest price out—within six months—as applied by the district court. We affirm it here, defendants having failed to suggest another more reasonable rule."

The fact situation in Smolowe differed significantly from that in the instant case. There, as in other cases where the courts have adhered to the rule of lowest price in, highest price out, the defendant did not contend that he no longer held the shares in question at the time of sale, as does defendant in this action. On the contrary, the claim was that these shares were still held by defendant and that the sale in question was of earlier acquired stock. See, e. g., Walet v. Jefferson Lake Sulphur Co., 202 F.2d 433 (5 Cir. 1953); Gratz v. Claugh-

ton, 187 F.2d 46 (2 Cir. 1951), cert. den. 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Blau v. Allen, 163 F.Supp. 702 (S.D.N.Y.1958), aff'd 202 F.2d 433 (5 Cir. 1953). The courts have refused to honor such a contention because, even if true, such a purchase and sale would better the position of the defendant and thus result in his profit in violation of the spirit of Section 16(b) if not its letter.

The court in Smolowe was aware of the severity of the lowest in, highest out rule which it posited. But as a matching of stock certificates would allow the frustration of Section 16(b), and as the court was unable to find "a more reasonable rule," there was no available alternative. Again, in Gratz v. Claughton, supra, the same court stated, 187 F.2d at p. 52, "Whether that is too drastic a means of meeting the evil, we have not to decide; it is enough that we can find no other way to administer the statute."

A rigid formula of lowest price in, highest price out, may be an entirely reasonable yardstick to apply when it is necessary to prevent the attempts of stockholders on the inside to avoid the impact of Section 16(b). But under the admitted circumstances here, it does not seem that the rule should be blindly applied. Here, there is absolutely no danger that a matching of stock certificates will allow a circumvention of the Act. Admittedly, the 25,942 shares were held less than six months. But, concededly also, there is no showing that Gamble-Skogmo made any profit on these shares when it transferred them to the Trust Fund. In view of these facts, plaintiffs should not be permitted to twist or distort the realities of the stock transfer by some artificial formula or fiction to the effect that when the 1,262,102 shares were sold on July 11, 1960, there was included therein the 25,942 shares which had already passed into the assets of the Trust Fund some five months before.

The undeniable fact is that the 25,942 shares which passed into the holdings of the Trust Fund were simply handled by Gamble-Skogmo as a conduit for the purpose of enabling the Trust Fund to place among its assets this number of shares which had been purchased through Allen and Company and delivered by that concern in street names to the defendant. The purpose of the Act is to provide that an insider engaging in so-called short swing trading must disgorge any profits he may have made when the stock was bought and sold during a six-month period. Under the circumstances here, the Court is not required to adopt some fiction in order to put teeth into the law. This transfer of stock by an insider to the Trust Fund is not an example of short swing trading. The Court will not adopt a construction of the statute which would simply result in a windfall to these plaintiffs and require the defendant to account for alleged profits on a stock transaction which did not inure to it.

The situation here is the same as it would be if Gamble-Skogmo had made a voluntary gift of the stock to the Trust Fund. In neither case would there be any profit to Gamble-Skogmo. See Shaw v. Dreyfus, 172 F.2d 140 (2 Cir. 1949), cert. den. 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719; Truncale v. Blumberg, 80 F.Supp. 387 (S.D.N.Y.1948). It is to no purpose to speculate that the Trust Fund might in the future benefit from any appreciation in Western Missouri stock. There is no showing that the Trust Fund was in effect the alter ego of Gamble-Skogmo. See Truncale v. Blumberg, supra. And, in any event, the stipulation of facts does not recite any circumstances which would justify a finding that the Trust Fund enjoyed any increased value of the stock over and above the $32.35 per share. Any profit from the sale to Beneficial did not benefit the Trust Fund.

There is no substance to defendant's counterclaim. Concededly, the transaction involving the 6,058 shares purchased and sold within the six-month period under the admitted facts would require the defendant to do that which it did do voluntarily.

462

 The remaining question to be decided pertains to the dividends received by the defendant on the 6,058 shares. The stipulation recites that between Jan-. uary 31, 1960, and July 11, 1960, Western Missouri declared and paid dividends on its common stock outstanding as follows:

| | Declaration Date | Record Date | Payment Date | Amount |
|---|---|---|---|---|
| 1. | February 1, 1960 | February 15, 1960 | March 1, 1960 | $.35/share |
| 2. | May 2, 1960 | May 18, 1960 | June 1, 1960 | $.35/share |

The stipulation recites that Gamble-Skogmo received dividends on each of the 1,262,102 shares between March 1, 1960, and June 1, 1960. There is no recital in the stipulation as to any dividends received on the 25,942 shares of stock delivered to the Trust Fund on January 28, 1960. In that the defendant realized not only the profit on the difference between $32.35 per share, which was the purchase price, and the $36 per share, which was the selling price of the 6,058 shares, and for which difference it has accounted and paid to Western Delaware as stated heretofore, the question arises as to whether it follows that the dividends received, in view of the remedial purposes of the law, come within its purview. All the dividends were declared and paid after the shares in question were purchased. The reasoning in Adler v. Klawans, 2 Cir., 267 F.2d 840, although involving a different factual situation, would seem to sustain the plaintiffs' position that the defendant must account to it for the dividends on the 6,058 shares held by defendant for less than six months and on which the profit by way of dividends was made in the sum of $4,240.60.

The above may be considered as the Court's findings of fact, and upon said findings of fact, the Court makes the following

## CONCLUSIONS OF LAW

1. That plaintiffs' claim for any recovery under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p (b), on the 25,942 shares of Western Missouri stock transferred by the defendant to the Pension Trust Fund is denied.

2. That plaintiffs are entitled to recover judgment against the defendant in the sum of $4,240.60, which is the profit the defendant received by way of dividends on 6,058 shares of Western Missouri stock, together with the legal rate of interest thereon from June 1, 1960.

3. That defendant is not entitled to recover on its counterclaim herein.

4. That plaintiffs recover their costs and disbursements herein.

5. Let judgment be entered accordingly.

It is so ordered. Exceptions are allowed.