**WESTERN AUTO SUPPLY COMPANY and Beneficial Finance Co., Appellants,**

v.

**GAMBLE–SKOGMO, INC., Appellee.**

**No. 17748.**

United States Court of Appeals
Eighth Circuit.

July 19, 1965.

Rehearing Denied Aug. 13, 1965.

Van Oosterhout, Circuit Judge, dissented in part.

Armin M. Johnson, of Faegre & Benson, Minneapolis, Minn., for appellants.

Edward J. Callahan, Jr., of Callahan & Callahan, Minneapolis, Minn., Allen T. Rorem, Minneapolis, Minn., for appellee.

Philip A. Loomis, Jr., General Counsel, Securities and Exchange Commission, Washington, D. C., Walter P. North, Associate General Counsel, George P. Michaely, Jr., Sp. Counsel and Roy Nerenberg, Attorney for Securities and Exchange Commission, Washington, D. C., for Securities and Exchange Commission, Washington, D. C., amici curiæ.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a judgment of the United States District Court of Minnesota denying claims for recovery of alleged "short swing" profits from transactions in the common stock of Western Auto Supply Company of Missouri under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p(b) and § 78aa.

Plaintiffs-appellants, Western Auto Supply Company and Beneficial Finance Co., both Delaware corporations, are hereafter referred to respectively as Western Delaware and Beneficial. Defendant-appellee, Gamble-Skogmo, Inc., a Delaware corporation, is hereafter referred to as Gamble-Skogmo. Western Auto Supply Company, formerly a Missouri corporation, is hereafter referred to as Western Missouri and the Gamble-Skogmo Profit-Sharing—Stock Bonus Trust Fund is hereafter referred to as Trust Fund.

The case was submitted to the District Court upon a stipulation of facts which we summarize. On January 1, 1960, Gamble-Skogmo had been for over six months the owner of 1,256,044 shares of the only outstanding common stock of Western Missouri which constituted more than a 10% beneficial ownership in this stock under § 16(a) of the Act, 15 U.S.

C.A. § 78p(a). On January 15, 1960, the Executive Committee of Gamble-Skogmo unanimously adopted a resolution approving the Company's purchase of 32,000 additional shares of common stock of Western Missouri for the purpose of contributing so much as necessary to its Trust Fund in satisfaction of the Company's annual contribution to the fund for the year 1959. Pursuant to this resolution, on January 21, 1960, the 32,000 shares were purchased at $32.35 per share or a total cost of $1,035,200.00. The shares were paid for on January 27, 1960, were delivered by the brokerage firm to Gamble-Skogmo in certificates bearing street names, and were duly endorsed in blank.

On or about January 28, 1960, Gamble-Skogmo transferred 25,942 of these recently purchased shares to its Trust Fund along with a check for $28.08, which combined represented the amount determined to constitute Gamble-Skogmo's contribution to its Trust Fund. Gamble-Skogmo was under no obligation to make this contribution in stock of Western Missouri or any other company.

On April 1, 1960, the Government brought a civil antitrust action against Gamble-Skogmo seeking divestiture of its holdings in Western Missouri. On July 18, 1960, a consent decree was entered in the antitrust case enjoining and restraining Gamble-Skogmo from owning shares in Western Missouri. Gamble-Skogmo at no time admitted the antitrust violations upon which the Government based its complaint. However, on July 11, 1960, less than six months after purchase of the 32,000 shares, Gamble-Skogmo sold its entire holding of 1,262,102 shares of Western Missouri common stock to Beneficial for $36.00 per share or a total sale price of $45,435,672.00.[1]

On October 27, 1961, Western Missouri merged with Beneficial, the latter emerging as the surviving corporation. After the merger was consummated, Beneficial transferred to Western Delaware all the

---

[1] This holding represented 1,256,044 shares owned on January 1, 1960, *plus* the 32,-000 shares purchased *less* the 25,942 shares transferred to Trust Fund.

assets formerly held by Western Missouri with exceptions not material here.

On December 13, 1961, the President of Western Delaware wrote Gamble-Skogmo demanding an accounting for profits, including dividends, which the latter received as an "insider" from the "short swing sale" of 32,000 shares of Western Missouri on July 11, 1960. Gamble-Skogmo responded by forwarding a check to Western Delaware for $22,111.-70, being the difference in the sale price over cost on 6,058 shares, but refused payment on the 25,942 shares which it had transferred to its Trust Fund.

In its decision reported in 231 F.Supp. 456, the District Court held that plaintiffs were entitled to recover the sum of $4,240.60 which is the profit received by way of dividends on the 6,058 shares together with the interest at the legal rate from June 1, 1960, to the date of judgment, April 19, 1964. The Court held against Gamble-Skogmo on its counterclaim for return of the $22,111.70 which it had paid voluntarily to Western Delaware on December 18, 1961. Gamble-Skogmo had alleged that this payment was made under a mistake of law and fact "and as a practical solution of an alleged claim" of Western Delaware.[2]

This appeal presents issues as to Western Delaware and Beneficial's capacity to bring this action; the existence of a purchase and a sale of the 25,942 shares of Western Missouri within the meaning of the statute; the existence of a profit on the purchase and sale of these shares; and the inclusion of dividends and interest in a recoverable judgment.

*Capacity to Sue.* At the outset the question is posed as to whether merger of the issuing corporation, Western Missouri, with a surviving corporation which subsequently assigns all the interests acquired in the issuer to a third corporation, properly vests the successor, Beneficial, and its assignee, Western Delaware, with the statutory right of the issuer to bring an action under § 16(b)?

In answering this proposition affirmatively, the District Court relied principally upon the merger statute of Missouri, the State where the issuing corporation was incorporated. This statute simply operates to transfer to the successor corporation without further act or deed all rights, privileges, interests, property and liabilities, including choses in action which formerly belonged or were chargeable to the merged corporation. See Mo.Rev.Stat. § 351.450, V.A.M.S. (1959).[3] The District Court also reasoned that since the legislative purpose of § 16(b) was intended to protect property rights of the investing public as well as those of the issuing corporation, § 16(b) must be broadly construed in reaching the decision that the chose in action here survived and was properly assigned.

We note that Gamble-Skogmo is in the anomalous position of having failed to cross-appeal from the District Court's finding that Beneficial and Western Delaware were entitled under § 16(b) to the profits on the 6,058 shares not conveyed to the trust, but retained in Gamble-Skogmo's corporate portfolio. Despite this apparent concession that not only the issuer, Western Missouri, but also its successor and assignee, Beneficial and Western Delaware, were proper parties to maintain a § 16(b) action for recovery of the non-trust fund profits, Gamble-Skogmo inconsistently argues that these appellants were incapable under the statute of suing for the profits on the 25,942 shares transferred to the Trust Fund. Even though we have grave reservations with respect to whether Gamble-Skogmo has not thereby already waived its right to challenge Beneficial and Western Delaware's capacity to bring this action, the issue is one of significant first impression and worthy of discussion.

---

2. Western Delaware brought this action and Beneficial intervened as a co-plaintiff. On appeal, the Securities and Exchange Commission, with leave of this Court, favored us with its *amicus curiae* brief.

3. Delaware, the state of incorporation of Beneficial, the successor, has a similar statute. Del.Code Ann. tit. 8, § 259 (Supp.1964).

By its express language, § 16(b) gives a right of action at law or in equity in any court of competent jurisdiction to recover profits gained by an insider in a short swing purchase and sale of stock to the issuer or the owner of any security of the issuer in its behalf.[4] Section 3 (a)(8) defines "issuer" as "any person who issues or proposes to issue any security * * *." 15 U.S.C.A. § 78c(a) (8). Gamble-Skogmo contends that the statutes' failure to create a right of action for heirs, successors or assigns of the named parties in interest indicates legislative intent to exclude their capacity to sue. And that the applicable federal common law does not recognize survival or assignment of this statutory right which is personal and expires when the party on whom it was conferred ceases to exist.

Gamble-Skogmo cites United States v. Klein, 153 F.2d 55 (8th Cir. 1946) as authority for its argument against looking to the general common law to determine whether a cause of action under § 16(b) can survive. This is a misinterpretation of our rationalé in Klein. That case involved federal statutes governing the medical and compensation benefits covering employees injured while serving in the old Civilian Conservation Corps. We held there that these statutory provisions furnished the Government its exclusive remedy for obtaining an assignment of a cause of action in order to recoup from the third party tort-feasor the benefits paid an injured CCC employee and for that reason no resort could be had to the common law of agency of the jurisdiction where the injury occurred to establish the Government's capacity to sue.

■ The view which has been embraced by the weight of federal authority is that resort must be made to the federal and general common law when the federal statute is silent with respect to the question of survivability to determine if the cause of action is of a nature or substance which has traditionally survived. Pierce v. Allen B. Du Mont Laboratories, Inc., 297 F.2d 323, 324 (3rd Cir. 1961), cert. denied 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962), reh. denied 371 U.S. 917, 83 S.Ct. 251, 9 L.Ed.2d 175 (1962), and cases there cited; Sullivan v. Associated Billposters and Distributors, 6 F.2d 1000, 42 A.L.R. 503 (2nd Cir. 1925); Mills v. Sarjem Corp., 133 F. Supp. 753 (N.J.1955).

■ An award for profits made by an insider in a short swing transaction under § 16(b) has been characterized without exception as non-penal, remedial compensation to protect property rights of the corporation and its investors for breach of the insider's fiduciary relationship. Adler v. Klawans, 267 F.2d 840 (2nd Cir. 1959); Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 231 (2nd

4. Sec. 16(b), 15 U.S.C.A. § 78p(b), provides:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transactions where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

Cir. 1943), cert. denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); Perfect Photo, Inc. v. Grabb, 205 F.Supp. 569 (E.D.Pa.1962); Epstein v. Shindler, 200 F.Supp. 836 (S.D.N.Y.1961).

■ At common law practically all actions arising *ex contractu* survived. However, a cause of action sounding in tort in the nature of a personal wrong abated when the injured party expired, while a tortious claim for protection of property rights survived. Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 128 F.2d 645, 649 (4th Cir. 1942); Sullivan v. Associated Billposters and Distributors, supra, 6 F.2d at 1004. Accordingly, this cause of action in tort which emanates from breach of the statutory duty imposed on an insider and is designed to safeguard property rights survived the absorption of the issuing corporation and was properly vested in Beneficial, the successor corporation.

■ Furthermore the District Court did not erroneously rely on the merger statute of Missouri as added support for its finding that the successor corporation inherited the chose in action by operation of law. Such statutes of Missouri and Delaware serve to codify the rule at common law which recognizes that a chose in action to enforce a property right upon merger vests in the successor corporation and no right of action remains in the merging corporation. See e. g., Akwell Corp. v. Eiger, 141 F.Supp. 19, 21 (S.D.N.Y.1956); 19 C.J.S. Corporations § 1628 at p. 1390.

■ We think the District Court was equally correct in its finding that given a surviving chose in action for protection of property rights and a valid merger agreement, Western Delaware could acquire a capacity along with Beneficial to sue Gamble-Skogmo by virtue of an effective assignment. In Spiller v. Atchison, T. & S. F. Ry., 253 U.S. 117, 135, 40 S.Ct. 466, 64 L.Ed. 810 (1920), the Supreme Court was faced with the similar problem of the assignability of a cause of action under the Interstate Commerce Act when the particular statute violated made no provision for assignment of claims. A unanimous court concluded that where the statute provided for compensation of a claim for damages sustained through the exaction of unreasonable charges for the carriage of freight, the claim was compensatory, not penal, in nature, and as a property right must be regarded as assignable at law in the absence of an express legislative intent to the contrary. Such a rule of statutory interpretation should apply with analogous vigor to the pertinent section of the Securities Exchange Act which we have been asked to interpret.

*Construction of § 16(b).* Our interpretation of § 16(b) compels disagreement with the trial court's ruling insofar as it excludes from the Act's interdiction the number of shares of Western Missouri transferred by Gamble-Skogmo to its Trust Fund. We base our conclusion upon the textual language of the Act, the abuses the Act was designed to prevent and what we consider to be well reasoned case law interpreting the Act.

■■ It is forcefully argued that because Gamble-Skogmo purchased the 32,000 shares for the avowed purpose of contributing so much thereof as was necessary to discharge its obligation to the Trust Fund and did, in fact, transfer 25,942 shares to the Trust Fund, there was no purchase, sale or profit to Gamble-Skogmo within the intendment of § 16 (b) as to those shares so transferred. Nevertheless, the authorities construing § 16(b) require the forfeiture of profits by an insider irrespective of his good faith or intentions which motivate his trading. Blau v. Max Factor & Co., 342 F.2d 304, 307 (9th Cir. 1965); Rheem Mfg. Co. v. Rheem, 295 F.2d 473, 475 (9th Cir. 1961); B. T. Babbit, Inc. v. Lachner, 332 F.2d 255, 257 (2nd Cir. 1964); Blau v. Lehman, 286 F.2d 786, 791 (2nd Cir. 1960), aff'd. 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); Walet v. Jefferson Lake Sulphur Co., 202 F.2d 433 (5th Cir. 1953); Gratz v. Claughton, 187 F.2d 46, 51 (2nd Cir. 1951); Smolowe v. Delendo Corp., supra.

Section 16(b) applies to an insider upon *"any* profit" realized from *"any* purchase and sale"—within any period of less than six months. (Emphasis supplied.)

The Securities Act defines "purchase" and "sale" as follows:

"(13) The terms 'buy' and 'purchase' each include *any* contract to buy, purchase, or otherwise acquire.

"(14) The terms 'sale' and 'sell' each include *any* contract to sell or otherwise dispose of." 15 U.S.C.A. § 78c (13), (14). (Emphasis supplied.)

It is obvious from the stipulation of facts that Gamble-Skogmo, concededly an "insider", bought, sold and profited from its transaction in Western Missouri stock within the prohibited six month period if the literal language of the Act is given plain and ordinary meaning.[5]

Gamble-Skogmo insists that because the stock was bought to fulfill an obligation to the Trust Fund that the word "purchase", or, as appellee refers to the transaction "acquisition", should not be given its ordinary meaning. Gamble-Skogmo offered no explanation for discharging its obligation to the Trust Fund in newly acquired Western Missouri stock, rather than with cash, or by dipping into the huge reserve of more than one million shares it had owned for approximately two years. The Executive Committee of Gamble-Skogmo voluntarily decided to acquire additional stock to be utilized in satisfaction of the Trust Fund obligation. Gamble-Skogmo elected to become a statutory fiduciary by owning a more than 10% interest in Western Missouri stock. Its voluntary assumption of loyalty subjects it to the disciplinary effect of § 16(b), regardless of the legitimate purpose for which the shares were destined.

■ Gamble-Skogmo next asserts that the sale of its entire holding of 1,262,102 shares on July 11, 1960, was not a "sale" which would subject the 25,942 shares transferred to Trust Fund to the application of § 16(b). It argues that the sale was compelled by the Government's antitrust action. It nevertheless voluntarily sold all Western Missouri stock standing in its name, and entered into a consent decree with the Government. The profitable sales price of some forty million dollars might have been a factor motivating the sale at that particular time if, as Gamble-Skogmo contends, it was not guilty of violating the antitrust laws. In any event, the mere pendency of an action would not weigh to justify giving the term "sale" any other than its ordinary meaning. More than a century ago, the Supreme Court defined "sale" and characterized it as " * * * a word of precise legal import, both at law and in equity. It means at all times a contract between the parties, to give and to pass rights of property for money, —which the buyer pays or promises to pay to the seller for the thing bought or sold." Williamson v. Berry, 8 How. 495, 543, 49 U.S. 495, 543, 12 L.Ed. 1170 (1850).

■ The issue is also raised that no one actually profited from the purchase of the shares transferred to the Trust Fund. True, these identical shares were not sold, but the segregation of shares is not permissible under § 16(b). On the contrary, a proper construction of

---

5. We said in Sternberg Dredging Co. v. Walling, 158 F.2d 678, 681 (8th Cir. 1947):

"In the interpretation of a statute its words are to be taken according to the meaning given them in common usage, unless to do so produces an absurd result or one which defeats the purpose for which the Act was passed. United States v. American Trucking Associations, supra, 310 U.S. 534, at page 543, 60 S.Ct. 1059, 84 L.Ed. 1345."

See also National Labor Relations Board v. Coca-Cola Bot. Co., 350 U.S. 264, 76 S.Ct. 383, 100 L.Ed. 285 (1956); Browder v. United States, 312 U.S. 335, 61 S.Ct. 599, 85 L.Ed. 862 (1941); United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40 (1940); Helvering v. Rebsamen Motors, 128 F.2d 584 (8th Cir. 1942).

§ 16(b) requires that purchases and sales be matched arbitrarily so as to disgorge the insider of a maximum profit under a rule of lowest-price-in and highest-price-out within six months, regardless of any intent with respect to a particular purchase or sale, and without limitation to a specific stock certificate. This rule was first enunciated in Smolowe v. Delendo Corp., supra, 136 F.2d at 237. Shares of stock are fungible and each certificate denotes identical rights. Gratz v. Claughton, supra, 187 F.2d at 51; Rubin & Feldman, Statutory Inhibitions upon Unfair Use of Corporate Information by Insiders, 95 U.Pa.L.Rev. 468 (1947). The segregation or matching of stock certificates cannot be countenanced without scuttling the remedial effect of § 16(b). To do otherwise would open wide the door for easy evasion of the purpose of the Act which the court in the Gratz case, supra at 51, indicated was to treat short swing transactions in shares of stock indiscriminately as " * * * sales and purchases, or purchases and sales, of gallons of oil in a single tank, or of bushels of wheat in a single bin, * * * the ascertainment of the particular shares bought or sold must be wholly irrelevant."

A review of the legislative history points up the abuses the Act was designed to overcome. Congress conducted extensive hearings which brought to light the vicious practices by insiders in their trading activities. In wrestling with the problem, Congress was concerned with the effect of the insiders' practices upon outside shareholders and the public generally.[6] Congress initially considered criminal sanctions but concluded that the complete elimination of profits regardless of the wrongdoer's intent would effectively eliminate short swing trading by insiders. See 95 U.Pa.L.Rev., op. cit. supra.

The Supreme Court in Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962) speaks of the "prophylactic" effect Congress clearly prescribed in § 16(b). Other cases cited in this opinion refer to § 16(b) as being "remedial", "broadly remedial", "thoroughgoing", and "absolute" in strictly construing the statute against the insider in order to effectuate its wholesome purpose. We observed in Creswell-Keith, Inc. v. Willingham, 264 F.2d 76, 80 (8th Cir. 1959):

> "Moreover, courts having occasion to interpret the Securities Act have generally held that the Act should be liberally construed to carry out the express legislative policy."

Section 16(b) must be construed so as to not dilute its vitality. We cannot have one rule for insiders with good intentions and another for those who would flagrantly abuse their trust. The burdens of the Act must fall on all violations with equal weight.[7]

Dividends. Lastly, Western Delaware and Beneficial contend that they are entitled to dividends and interest on all 32,000 shares of Western Missouri stock here in question. We agree.

---

6. See Hearing before House Committee on Interstate and Foreign Commerce on H.R. 7852 and H.R. 8720, 73rd Cong., 2nd Sess. (1934) 85; Hearing before Senate Committee on Banking and Currency on S.Res. 84, 72nd Cong., and S.Res. 56 and S.Res. 97, 73rd Cong., 1st Sess. (1934) 6557–6559.

7. Gamble-Skogmo's reliance on Shaw v. Dreyfus, 172 F.2d 140 (2nd Cir. 1949), cert. denied 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949), and Truncale v. Blumberg, 80 F.Supp. 387 (S.D.N.Y. 1948), the so-called "gift cases", is, we think, misplaced. Both of these cases dealt with bona fide gifts. Neither involved a sale within six months. Since there was no subsequent sale within the proscribed period, the transactions in the gift cases could not fall within the ambit of § 16(b). The patent difference here is that there was a subsequent sale by Gamble-Skogmo in July of 1960 after the transfer to the Trust Fund within the proscribed six month period. We also have noted the reference to the ethical position of Beneficial in seeking to recover, in effect, a part of the purchase price it willingly paid for the stock. The punctilios of the parties are not an issue here.

The District Court allowed recovery of dividends on 6,058 shares but denied them on the 25,942 shares transferred to Trust Fund. This holding was, of course, in conformity with the District Court's decision to match the stock certificates. However, as previously stated, we think the court erred in its interpretation and application of the Smolowe and Gratz decisions.

The 32,000 shares of stock purchased on January 21, 1960 lost, on that day, all individual identity with respect to certificate numbers and a subsequent sale of any number of shares up to and including 32,000, within six months, resulting in a "profit" subjects the "insider" to liability under § 16(b). Gratz v. Claughton, supra; Smolowe v. Delendo Corp., supra; Walet v. Jefferson Lake Sulphur Co., supra.

Apparently, the question of including dividends in the "profit realized" from the "sale and purchase" has arisen infrequently. In Adler v. Klawans, supra, dividends were declared in three different years with each involving a different factual relationship to the defendant. The first dividend was declared before defendant was a shareholder and the second declared before he was elected a director, although he was by this time a shareholder of less than 10%. In neither instance was defendant an "insider" in the sense of having an opportunity to misuse private corporate information unavailable to "outside" shareholders. When the third dividend was declared, defendant was a director but in the words of the court, supra, 267 F.2d at 849, the "shares on which the * * * dividends were declared and paid * * * were sold * * * at a loss * * * which was greater than the amount of the dividends." The court excluded this category because no profits were realized by defendant while trading as an insider.[8]

In the case at bar, Gamble-Skogmo was already an "insider" when the dividends were declared and paid. Its status remained unchanged when the shares were ultimately sold within six months. The 32,000 shares were sold at a profit with the dividend simply increasing this gain. None of the Adler "situations" pertaining to dividends are present here.

 *Interest.* An allowance of interest is not mandatory in cases of this kind. Magida v. Continental Can Co., 231 F.2d 843 (2nd Cir. 1956), cert. denied 351 U.S. 972, 76 S.Ct. 1031, 100 L.Ed. 1490 (1956). The trial court may in its discretion make such awards depending upon the equities of the case. Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). There is at least one decision holding that the defendant show some "overriding inequity" in allowing interest as a full accounting ordinarily includes such awards. Perfect Photo, Inc. v. Grabb, supra, 205 F.Supp. at 573–574. The record does not reveal evidence of such inequities to warrant reversal of the trial court on the basis that it abused its discretion in granting interest.

 Interest was allowed on the dividends of 6,058 shares from June 1, or the payment date of those dividends. At this time, however, Gamble-Skogmo was not in violation of § 16(b) as the "sale", within six months of purchase, was yet to be transacted on July 11. We think if interest is to be allowed at all, it should not begin to accrue until liability matures. Thus, such an allowance would not run from the date the dividends were paid but from the date of sale. Stella v. Graham-Paige Motors Corp., 232 F.2d 299, 302 (2nd Cir. 1956), cert. denied 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52 (1956); Magida v. Continental Can Co., supra, 231 F.2d at 848; Blau v. Mission Corp., 212 F.2d 77, 82 (2nd Cir. 1954), cert. denied 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954).

Reversed and remanded for proceedings not inconsistent with this opinion.

8. Accord, Marquette Cement Mfg. Co. v. Andreas, 239 F.Supp. 962, 968 (S.D.N.Y.1965).

VAN OOSTERHOUT, Circuit Judge (dissenting in part).

I concur in the view of the court that plaintiffs have capacity to bring this suit. I agree with the court's opinion to the extent that it holds plaintiffs are entitled to recover under § 16(b) for the profits realized on the 6,058 shares of Western Missouri stock acquired in March 1960 which were not turned over to the Trust Fund, and I also agree that plaintiffs are entitled to the 70¢ per share in dividends paid on the 6,058 shares.

I dissent from the portion of the opinion which in disagreement with the trial court determines that the 25,942 shares of stock acquired in March 1960 and turned over to the Trust Fund were purchases within the meaning of § 16(b). In Blau v. Max Factor & Co., 9 Cir., 342 F.2d 304, 306–307, the court states:

> "The statutory definitions of 'purchase' and 'sale' are exceedingly general. They are given specificity by measuring questioned transactions against the purpose of section 16 (b). Thus, a transaction is held to be a 'purchase' within section 16(b) 'if in any way it lends itself to the accomplishment of what the statute is designed to prevent.' Blau v. Lehman, 286 F.2d 786, 792 (2d Cir. 1960), aff'd 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). See also Park & Tilford v. Schulte, 160 F.2d 984 (2d Cir. 1947). On the other hand, to avoid purposeless harshness, a transaction is held not to be a section 16(b) 'purchase' if it 'was not one that could have lent itself to the practices which Section 16(b) was enacted to prevent.' Ferraiolo v. Newman, 259 F.2d 342, 346 (6th Cir. 1958). See also Roberts v. Eaton, 212 F.2d 82, 85–86 (2d Cir.

1954); Shaw v. Dreyfus, 172 F.2d 140, 142 (2d Cir. 1949). Cf. Blau v. Mission Corp., 212 F.2d 77, 80 (2d Cir. 1954) ('sale'); Falco v. Donner Foundation, 208 F.2d 600, 604, 40 A.L.R.2d 1340 (2d Cir. 1953)."

I agree with the foregoing statement.

For the reasons pointed out by Judge Nordbye in his opinion reported at 231 F.Supp. 456, the facts in our present case do not present a situation which lends itself to the accomplishment of an objective § 16(b) is designed to prevent.

Judge Nordbye found: "The undeniable fact is that the 25,942 shares which passed into the holdings of the Trust Fund were simply handled by Gamble-Skogmo as a conduit for the purpose of enabling the Trust Fund to place among its assets this number of shares which had been purchased * * *." 231 F. Supp. 456, 461. Upon the basis of such finding, Judge Nordbye states:

> "The purpose of the Act is to provide that an insider engaging in so-called short swing trading must disgorge any profits he may have made when the stock was bought and sold during a six-month period. Under the circumstances here, the Court is not required to adopt some fiction in order to put teeth into the law. This transfer of stock by an insider to the Trust Fund is not an example of short swing trading. The Court will not adopt a construction of the statute which would simply result in a windfall to these plaintiffs and require the defendant to account for alleged profits on a stock transaction which did not inure to it." 231 F. Supp. 456, 461.

The court's finding is supported by substantial evidence.[1]

1. The Securities and Exchange Commission in its amicus curiae brief states: "Judge Nordbye's conclusion that appellee acted as a 'conduit' for the purpose of making the purchase for the trust fund appears to be without support in the record. The fact of appellee's purchase of an additional 6,058 shares at a time when the amount of its outstanding obligation was determined suggests doubt as to the validity of the determination that it acted merely as a 'conduit.' If, however, appellee had, in fact, confined its activities in connection with the questioned transactions to acting solely as agent for the trust fund, the trial court's result might have been reached without endangering the principles which we feel must not be impaired."

The trust agreement authorizes payment of contributions due in the form of Western Missouri stock. On January 15, 1960, the Gamble-Skogmo executive committee, as reflected by its minutes, approved the purchase of 32,000 shares of Western Missouri stock "for the purpose of contributing the same, or so many shares thereof as are necessary, to the Trustees of the Company's Profit-Sharing-Stock Bonus Trust Fund in satisfaction of the Company's contribution to that trust fund for 1959."

It is stipulated that at the time the executive committee took the foregoing action, 32,000 shares was the best estimate available as to the number of shares needed to cover the contribution. On January 21, the 32,000 shares were purchased through a broker. They were paid for and received in street names endorsed in blank on January 27, 1960. The exact amount of the contribution was not definitely ascertained until sometime between January 21 and January 28. On January 28, 1960, 25,942 shares of the 32,000 shares just acquired were transferred to the trust fund in satisfaction of the 1959 contribution due. It is well-established that courts look to the substance as well as to the form of transactions. See Rheem Mfg. Co. v. Rheem, 9 Cir., 295 F.2d 473, 476.

In my view, Judge Nordbye very clearly points out in his reported decision the reasons why the transaction here involved in no way defeats the purpose which § 16(b) was designed to prevent.

I do not question the validity of the decisions relied upon by the majority as applied to the facts of such cases. A number of such cases point to the rule as being a harsh one but one that is required to effect the purposes of the Act. Under the facts of this case, no strained construction of the word "purchase" is needed to prevent realization of insider profits. I would affirm upon the basis of Judge Nordbye's well-reasoned and supported opinion.