Nicholas **FERRAIOLO**, Appellant,

v.

**F. R. NEWMAN**, Appellee.

No. 13345.

United States Court of Appeals
Sixth Circuit.

Sept. 24, 1958.

Ralph Rudd (of Harrison, Spangenberg & Hull), Cleveland, Ohio, Allan Hull, Cleveland, Ohio, on brief, for appellant.

Louis Loss, Cambridge, Mass., James A. Weeks (of Thompson, Hine & Flory), Cleveland, Ohio, on brief, for appellee.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

STEWART, Circuit Judge.

This appeal involves the applicability of Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78p (b). That section provides that any profit realized by a corporate director resulting from his purchase and sale of the corporation's stock within less than six months shall inure to the corporation.[1]

---

1. If the corporation is the issuer of equity securities listed on a national securities exchange. Section 16(a) and (b) provide:

"(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange (and a duplicate original thereof with the Commission) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been any change in such ownership during such month, shall file with the exchange a statement (and a duplicate original thereof with the Commission) indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer

In 1948 the appellee, Newman, acquired 43,720 shares of the convertible preferred stock of Ashland Oil and Refining Co. (Ashland) as a result of a merger. At that time Newman became a director of Ashland. More than three years later, on November 23, 1951, he exercised the right to convert these shares into 48,092 shares of Ashland common stock. Within six months thereafter, he sold 20,000 shares of Ashland common stock at prices in excess of the November 23, 1951, price.

Upon demand of the appellant Ferraiolo, a stockholder, Ashland brought this action against Newman to recover Newman's profits resulting from the above transaction. Ferraiolo was permitted to intervene. The district court entered a summary judgment in favor of Newman, holding that the transaction was not covered by Section 16(b) of the Act. Only the intervenor has appealed.

■ It can fairly be gathered from the abbreviated record that Newman was a very inactive director of Ashland, and that during the period in question he was not in fact privy to any inside information concerning the company. Such considerations, however, are entirely irrelevant to the applicability of Section 16(b), as counsel for Newman readily concede. Smolowe v. Delendo Corp., 2 Cir., 1943, 136 F.2d 231, 235–236, 148 A.L.R. 300, certiorari denied 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446; Gratz v. Claughton, 2 Cir., 1951, 187 F.2d 46, 49–50, certiorari denied 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353.

It is evident that the narrow question in this case is whether Newman's acquisition of the Ashland common stock upon conversion of his preferred stock on November 23, 1951, was a "purchase" within the meaning of Section 16(b) of the Act. If so, Newman was liable to the corporation for the profit he realized when he sold 20,000 shares of the common stock within the ensuing six months. Smolowe v. Delendo Corp., supra, 136 F.2d at pages 237–239; Gratz v. Claughton, supra, 187 F.2d at pages 50–52.

The statute itself furnishes no definition that would supply an easy answer to the question. It provides only that the term "purchase" *includes* "any contract to buy, purchase, or otherwise acquire." 15 U.S.C.A. § 78c (a) (13). It is thus apparent that while the transaction here was not one falling within the ordinary concept of a "purchase,"[2] nevertheless the statutory definition would not necessarily exclude it.

■ It is also apparent, however, that the question is not in any event primarily a semantic one, but must be resolved in the light of the legislative purpose— to curb short swing speculation by insiders. Most of the litigation involving the meaning to be given "purchase" in Section 16(b) has arisen in the District Court for the Southern District of New York. A series of decisions in that court and in the Court of Appeals for the Second Circuit have marked out an approach to the problem which is pragmatic rather than technical. Each case has been decided on its own facts, and the enunciation of a "black letter rubric" has been expressly avoided. Park & Tilford, Inc., v. Schulte, 2 Cir., 160 F.2d 984, certiorari denied 1947, 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347; Shaw v. Dreyfus, D.C., 79 F.Supp. 533, 2 Cir., 172 F.2d

in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection." 15 U.S.C.A. § 78p (a) and (b).

2. "The generally understood meaning of 'purchase' is to acquire something by one's own act or agreement for a price." Shaw v. Dreyfus, 2 Cir., 1949, 172 F.2d 140, at page 142, certiorari denied 337 U.S. 907, 69 S.Ct. 1048, 92 L.Ed. 1719.

140, certiorari denied 1949, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719; Truncale v. Blumberg, D.C., 80 F.Supp. 387; Blau v. Hodgkinson, D.C.1951, 100 F.Supp. 361; Blau v. Ogsbury, 2 Cir., 1954, 210 F.2d 426; Blau v. Mission Corporation, D.C., 113 F.Supp. 153; 2 Cir., 212 F.2d 77, certiorari denied 1954, 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138; Roberts v. Eaton, 2 Cir., 212 F.2d 82, certiorari denied 1954, 348 U.S. 827, 75 S.Ct. 44, 99 L.Ed. 652.

The standard that emerges from these decisions can be simply stated: Every transaction which can reasonably be defined as a purchase will be so defined, if the transaction is of a kind which can possibly lend itself to the speculation encompassed by Section 16 (b).[3] Accepting that standard, we turn to the relevant circumstances of the present case.

The preferred shares which Newman acquired in 1948 were convertible by the owners at any time prior to July 15, 1958, into Ashland common shares on a share-for-share basis. However, the convertibility of the shares was protected against dilution by a provision that the conversion ratio should be adjusted in the event of any change in the number of outstanding common shares, so that, in 1951, when Ashland declared a ten per cent stock dividend on its common shares, the conversion ratio became 1 preferred for 1.10 common, and additional common shares were reserved and set aside to correspond with the changed rate. Both Ashland preferred and Ashland common were registered securities and listed on the New York Stock Ex-change. The preferred shares were fully redeemable by Ashland at a fixed price upon thirty days written notice, but during the thirty-day period the conversion privilege remained unimpaired.

On November 15, 1951, Ashland called all of the then outstanding convertible preferred shares for redemption at $27 a share on December 17, 1951. During almost all of the preceding year Ashland common had been selling on the New York Stock Exchange at prices in excess of this redemption price. By reason of their undilutable conversion privilege, Ashland preferred shares had been selling at a price equivalent to the common, when adjusted to reflect the 1.10 conversion ratio. At the time the preferred shares were called for redemption, the market price of Ashland preferred and Ashland common (adjusted) was approximately $36 per share, or $9 per share more than the redemption price. Faced with a choice of permitting his preferred shares to be redeemed at $27 a share or converting them into common shares selling for $36, Newman naturally took the latter course, as did the holders of more than 99 per cent of the outstanding preferred shares.

The convertible preferred shares which Newman acquired in 1948 were subject at any future time to call for redemption. Once the market price of the common stock rose above the redemption price of the preferred, the preferred, with its undilutable conversion privilege, became, in the objective judgment of the market place, the economic equivalent of the common. The real effect of Ashland's subsequent call of the preferred for re-

---

**3.** This is substantially the same test as that proposed in "The Scope of 'Purchase and Sale' under Section 16(b) of the Exchange Act," 59 Yale L.J., at 513 (1950):

"Some transactions, however, are neither clearly included in, nor excluded from, the statutory definition of 'purchase' and 'sale.' As used in Section 16 (b), 'purchase' may or may not include the receipt, by virtue of stock ownership of stock rights and stock dividends. 'Sale' may or may not include gifts, whether for charitable or non-charitable purposes. The exercise of a conversion feature may or may not be either or both. If insider trading is to be effectively deterred, 'purchase' and 'sale' must consequently be interpreted in the light of Section 16(b)'s purpose. The question whether to include particular transactions within their scope therefore must be tested by the following standard—is inclusion necessary to recover profits made from short term insider speculation?"

demption was simply to force the surrender of the preference features of the preferred. All of the perferred shareholders were treated alike; full disclosure was made to them; the conversion worked no material change in the proportional equity ownership of Ashland.

This, then, is a case quite different from Park & Tilford, Inc., v. Schulte, 2 Cir., 1947, 160 F.2d 984, certiorari denied 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347, upon which the appellant heavily relies. In that case the insiders exchanged nonmarketable preferred shares for marketable common stock which was "more valuable." See Blau v. Mission Corporation, 2 Cir., 1954, 212 F.2d 77, at page 81, certiorari denied 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138. The convertibility of the preferred shares in that case was not protected against dilution. The two classes of shares were not, therefore, in any sense economic equivalents. Moreover, the conversion in that case was voluntary in that the insiders had complete control of the corporation and could, therefore, determine whether the preferred would be called for redemption. See Roberts v. Eaton, 2 Cir., 1954, 212 F.2d 82, at page 83, certiorari denied 348 U.S. 827, 75 S.Ct. 44, 99 L.Ed. 652.

Here, by contrast, Newman's conversion of preferred stock into common was in a very real sense involuntary. He would have lost approximately nine dollars a share if he had allowed his preferred shares to be redeemed. While it is true that he could have sold the preferred shares on the open market instead of converting them, it can hardly be said that a failure to sell is tantamount to a purchase.

■ In short, an analysis of the circumstances of this case leads to the conclusion that the district court was not in error in holding Newman free from Section 16(b) liability. Newman's conversion of Ashland preferred to Ashland common had none of the economic indicia of a purchase; it created no opportunity for profit which had not existed since 1948. The transaction was not one that could have lent itself to the practices which Section 16(b) was enacted to prevent.

The judgment of the district court is affirmed.