Eugene W. LANDY, individually and on behalf of all shareholders of United Fruit Company, and derivatively on behalf of United Fruit Company, Plaintiff,

v.

UNITED FRUIT COMPANY, a New Jersey corporation, A M K Corporation, a Delaware corporation, Donaldson, Lufkin & Jenrette, Inc., a New York corporation, Dreyfus Fund, Inc., a Maryland corporation, Connecticut General Life Insurance Company, a Connecticut corporation, Affiliated Fund, Inc., a Delaware corporation, Shareholders Trust of Boston, a Massachusetts corporation, and Insurance Security Fund, a Delaware corporation, Defendants.

Civ. A. No. 314–69.

United States District Court
D. New Jersey.

Oct. 3, 1969.

As Amended Dec. 2, 1969.

Eugene W. Landy, Eatontown, N. J., for plaintiff.

Kasen, Schnitzer & Kraemer, by Morris Schnitzer, Newark, N. J., Milton Gould, New York City, for AMK Corp.

On Motion Of AMK Corporation
For Summary Judgment
OPINION

WORTENDYKE, District Judge:

Jurisdiction of this action is predicated upon § 27 of the Securities Exchange Act of 1934, [hereinafter Act] 15 U.S.C. § 78aa et seq. The plaintiff, a stockholder of United Fruit Company [hereinafter United] brings this action in behalf of that corporation to recover alleged secret profits pursuant to § 16(b) of the Act, 15 U.S.C. § 78p(b).

The complaint alleges that the capital of United consists of approximately 213,334 shares of preferred stock and approximately 8,053,361 shares of common stock, all registered on the New York Stock Exchange. Plaintiff charges that on September 24, 1968 AMK Corporation

[hereinafter AMK] purchased 733,200 shares of United common from Donaldson, Lufkin & Jenrette, Inc. [hereinafter DLJ] acting as agent and from six institutional investors for whom DLJ acted as broker, at $56 per share and thereafter an additional 7,100 shares of United common on open market, thereby acquiring in direct ownership 740,300 shares at an aggregate cost of $41,778,000.

Plaintiff alleges that AMK is controlled by a group of mutual funds owning approximately 25% of AMK, and it is charged that on September 30, 1968 these mutual funds also owned 14% of United common.

It is further alleged, and not contradicted, that by the terms of a letter, dated September 24, 1968, from AMK to the defendants it was provided as follows:

"We have today purchased from you _____ shares of Common Stock of United Fruit Company at a price of $56 per share plus commissions, payment of which will be made to you through Donaldson, Lufkin & Jenrette, Inc., in accordance with customary settlement procedures.

We hereby confirm that as part of such transaction we have agreed with you that, if, pursuant to a general offer to shareholders of United Fruit Company made within twelve months of the date hereof, we purchase shares of United Fruit Company for cash at a higher price then $56 per share, we will make an adjustment with you so that the price paid to you will be equal to such higher price. If we purchase shares of United Fruit Company pursuant to such a general offer in exchange for securities or commence action within twelve months of the date hereof to combine with United Fruit Company, whatever the legal mechanics, you will have the right to rescind your sale to us provided you then resell to us the shares received by you on rescission in exchange for the best package of securities which we give to any other person."

The 733,200 shares of United stock purchased by United pursuant to the terms of said letter were transferred to the name of AMK and certificates thereof delivered into its possession.

On January 24, 1969, upon a prospectus of that date, AMK made a public exchange offer to common and preferred stockholders of United. The AMK securities offered in exchange for United stock were $317,107,287 principal amount of 5½% convertible subordinated debentures, due February 1, 1994, and 4,589,711 shares of common stock, together with 12,517,393 warrants to purchase shares of common stock as set forth in its prospectus by the provisions of which the offer was to expire at 5:00 P.M., New York City Time on January 31, 1969, unless extended by AMK. Upon the motion for summary judgment, hereinafter referred, to a copy of this prospectus was admitted in evidence and marked P–1 of September 8, 1969.

This case is now before this Court upon the motion of AMK for summary judgment dismissing the complaint as to all defendants for failure to set forth a cause of action upon which relief can be granted. The motion was duly briefed in behalf of the respective parties, and orally argued on September 8, 1969. This opinion embodies the decision of the Court granting summary judgment to the moving party AMK.

Affidavits have been submitted and filed on behalf of AMK and the plaintiff does not dispute the facts set forth in these affidavits, but no affidavit has been filed in behalf of the plaintiff.

It is further conceded, and indeed alleged in the complaint, that on or about January 24, 1969, and within six months of the purchase pursuant to the letter of September 24, 1968, Donaldson, Lufkin and Jenrette, Inc., individually, and as agent for the six institutional investors named as defendants herein, advised AMK of its respective elections to exercise its rights under the letter agreement of September 24, 1968. This was done by returning the initial payment of $56 per share which AMK had made and requesting the "package" of AMK securities offered pursuant to the AMK pro-

spectus which they deemed to be worth more than the $56 which AMK had paid pursuant to the 1968 letter.

It appears from the affidavit of Irving Jacobson, of counsel for AMK, submitted in support of the pending motion that the "mechanics" employed to effect the "price adjustment" with respect to the 733,200 shares of United pursuant to the letter of September 24, 1968 were as follows:

"(a) The 733,200 common shares of United were registered in the name of AMK at the time of the transfer of said shares to AMK in September 1968. They remained registered in the name of AMK and never left its possession.

(b) AMK directed the Old Colony Trust Company (which was the Exchange Agent designated in the registration statement filed with the S.E.C.) to issue to the September 1968 sellers the same package of AMK securities which was being offered generally under the exchange offer and to deliver these AMK securities to AMK, which already owned the corresponding United shares.

(c) When the AMK securities so issued were received by AMK, Mr. Jacobson arranged to deliver them to representatives of each of the September 1968 sellers in exchange for their certified checks representing the refund of cash paid by AMK in September 1968 as agreed between AMK and the said sellers."

The same affiant further stated that the 7,100 shares of United which AMK purchased on the open market in September 1968 were registered in the name of AMK which has continued to hold them at all times as legal and beneficial owner thereof.

The present action stands or falls upon the provisions of § 16(b) of the Act (15 U.S.C. § 78p(b)), which provides in pertinent part that:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, [of more than 10 per centum of any class of any equity security] * *, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer * * * within any period of less than six months, * * *, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, * * * in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; * * *."

From the foregoing statutory provisions it is obvious that in order to sustain a cause of action predicated upon the provisions of the section it must appear:

"(1) that there was a 10% ownership of the issuer,

(2) that there was a purchase and sale or sale and purchase within a six month period; and

(3) that a profit was realized."

As contended by the movant, unless the plaintiff can prove each of the foregoing statutory requisites his complaint must be dismissed. Therefore if the undisputed facts and law disclose that the plaintiff will be unable to prove any one of these three necessary elements, it must also be dismissed.

I conclude upon the pleadings, the affidavits, interrogatories and answers thereto that there was neither a purchase and sale nor sale and purchase within the six month period by the movant AMK.

The September transaction was a purchase but the January transaction was not a sale. As is well argued in movant's reply brief:

"Even if the September sellers were United 'insiders,' possessed of inside knowledge, they had lost all capacity to exploit such an advantage. The 733,200 United shares delivered to AMK in September were permanently beyond the reach of the sellers."

The September letter authorized a price adjustment only if and after AMK made a public offer for the United stock. Moreover, the amount of the adjustment in January precisely matched the tender to the public. " * * * so that the sellers fared no better or not worse than the public." The January transaction " 'did not interrupt the continuity of [AMK's] investment' " in the 733,200 United shares which it had purchased the previous September. See Blau v. Max Factor & Co., 342 F.2d 304 (9th Cir. 1965). The January transaction moreover " 'worked no material change in the proportional equity ownership' " of United by AMK. See Ferraiolo v. Newman, 259 F.2d 342 (6th Cir. 1958). After all these events AMK still " 'retained the investment position in the securities' " of United that it had previously acquired. See Blau v. Lamb, 363 F.2d 507 (2nd Cir. 1966). In sum, therefore, the purchase under the September letter contemplated that if a higher price were subsequently obtained on a public offer of the securities a price adjustment would be allowed to the September seller to meet the subsequent public offering price. It was this adjustment which was effectuated in January in compliance with the provisions of the September letter. Consequently AMK did not sell within six months after purchasing the securities of United which it purchased in September 1968.

In opposing the pending motion plaintiff leans upon the words "recission" and "resell" in the letter of September 24, 1968 for support for his contention that a "purchase and sale" took place in January 1969. Movant argues and this Court agrees that the January transac-tion was not a "recission" and there was no resale despite the language of the letter. Moreover, if the January 1969 transaction amounted to a recission, it could not be construed to constitute a "resale" but may be more accurately characterized as a "nullification of the September purchase." This was the situation in Kahansky v. Emerson Radio & Phonograph Corp., 184 F.Supp. 90 (S.D. N.Y.1960) which was also an action under § 16(b). The plaintiff in the cited case also relied upon the right of a stock purchaser to rescind upon the occurrence of certain events. This right was exercised, whereupon the action was brought against the stock purchaser under § 16 (b) charging that the return of the stock which was required to complete recission was a sale within six months. The district court held that:

"Upon transfer of the stock to it, Emerson became the beneficial owner of more than 10% of the stock of Webcor, and if in fact on July 14, 1959 it disposed of this stock at a profit, that profit would inure to the benefit of Webcor * * * we find, however, that the transfer of the stock on July 14, 1959, by Emerson to Webcor was not a sale but was in truth a recission of the May 7, 1959 purchase creating no liability to account * * *."

Indeed, in the case at bar, there was not even an effective recission of the September transaction because the stock which had been purchased by AMK was not returned or tendered to the original sellers, who never regained possession or ownership or reacquired the power of disposition of the stock, of all control over which they had divested themselves in September 1968.

Finding no genuine issue of material fact in this case, but on the contrary concluding that AMK Corporation is entitled to judgment as a matter of law, summary judgment in favor of the defendant and against the plaintiff must be granted pursuant to F.R.Civ.P. 56.

An Order may be presented in conformity with this Opinion.