**MOULDINGS, INC., Plaintiff-Appellee,**

v.

**Ernest E. POTTER, Defendant-Appellant.**

**No. 71–2867.**

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1972.

Rehearing and Rehearing En Banc
Denied Sept. 15, 1972.

See also D.C., 315 F.Supp. 704.

Barry Phillips, G. Kimbrough Taylor, Jr., Atlanta, Ga., Myers & Parks, John R. Parks, Americus, Ga., for defendant-appellant, Ernest E. Potter; Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Susan A. Cahoon, Atlanta, Ga., of counsel.

Frank C. Jones, Timothy K. Adams, Macon, Ga., Jones, Cork, Miller & Benton, Macon, Ga., of counsel.

Before RIVES, BELL and MORGAN, Circuit Judges.

BELL, Circuit Judge:

This appeal is from a judgment rendered in favor of a corporation against an officer-director on a claim for profits due under § 16(b) of the Securities Exchange Act of 1934,[1] 15 U.S.C.A. § 78p.

---

1. §§ 16(a) and (b) :

(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to section 12 of this title, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 12(g) of this title, or within ten days after he becomes such beneficial owner, director, or officer, a statement with the Commission (and, if such security is registered on a national securities exchange, also with the exchange) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, shall file with the Commission (and if such security is registered on a national securities exchange, shall also file with the exchange), a statement indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and

We affirm as to liability. We vacate as to the amount of the judgment and remand with direction.

## I.

Potter, an officer and director of Mouldings, Inc., placed 8,000 shares of Mouldings stock with Bache and Company, as his broker, for sale. Bache promptly sold the stock for $200,305.54 and, in turn, used the funds to purchase other securities for Potter at his direction.

The sales by Bache took place on November 6, 7, 18, and 19, 1969. On November 19, 1969, Bache discovered that the Potter stock was unregistered and restricted and thus could not be sold. This placed Potter in a short position.[2] He was immediately obligated to replace the short shares. Either Potter or Bache could have purchased the necessary 8,000 shares on the open market. Meanwhile, the price of the stock had dropped sharply and Potter, as a seller and purchaser under § 16(b), would have been obligated to pay over the profits to Mouldings, Inc.

Potter asked for and received the cooperation of Bache in an arrangement by him whereunder he obtained shares from business associates, friends and a relative selected by him in order to meet his obligation to Bache.[3] This procedure at this point was no more than a sale and purchase just as if Potter or Bache had purchased on the open market. The profits would still have been due to Mouldings under § 16(b). Potter then went a step further in the hope of avoiding payment to Mouldings and it is this step which is the nub of the controversy between the parties.

## II.

Potter conceived the idea of diverting the profits on the original transaction to the aforesaid group of business associates, friends and a relative (designees), rather than paying them to Mouldings, Inc. for the benefit of all its stockholders. He sought to give life to his conception by a process of novation. They would take his place in the transaction *ab initio*. He would return to Bache the sum which he had already received from Bache. The designees would take over his obligation to sell and Bache would pay them the original sum as sellers. This arrangement was made in December despite the fact that the Potter restricted stock had been sold and Potter was short; Potter had been paid; and the stock was selling for approximately one half the amount per share which Potter received in November. Potter's designees cooperated to the end of following instructions from

sale, or any sale and purchase, of any equity security of such issuer (other than an exempt security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. . . .

2. A short sale is defined by the rules and regulations of the Securities and Exchange Commission as:

" . . . any sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by or for the account of the seller." 17 CFR 240.3b–3.

In such a sale the purchaser is altogether unaware whether he is buying from a short seller or from an actual owner of stock. The seller must deliver the stocks he has sold within the period limited by the rules of the Exchange. Since he has no shares to deliver, he must obtain them somewhere. The usual practice is for the broker executing the sale to borrow the stock on his customer's behalf. 2 Prentice-Hall, Securities Regulations, par. 11,213.

3. This group consisted of Potter's father-in-law who made loans to Potter, a friend who had made a $55,000 unsecured loan to Potter, a person who thereafter went into business with Potter, Potter's banker who made loans to Potter at various times, an employee of Potter's, and a customer of Potter's.

Potter and Bache, paperwise and otherwise, in carrying out this conception and arrangement to the letter. Potter transmitted his check to Bache in repayment on February 2, 1970 and Bache paid the Potter designees on February 9, 1970. Thus the profits which Potter had made were made available to his designees.

Mouldings, Inc. brought suit against Potter for the profits inuring to him under the original sale and subsequent purchases. The cause of action was premised on § 16(b) and on attributing the purchases from the Potter designees to Potter rather than to Bache. The district court agreed and rendered summary judgment for Mouldings, Inc.

### III.

On appeal, Potter asserts that the transaction was removed from the scope of § 16(b) by the novation theory. As did the district court, we reject this contention. To do otherwise would exalt form over substance. It would immunize an officer and director of a corporation covered by the Act from the strictures of § 16(b) to the extent that he could deal as an insider and then favor selected stockholders with profits which would ordinarily flow to the corporation under § 16(b) for the benefit of all of its stockholders.

Potter urges that the district court erred in not applying the "possibility of abuse" test to the transaction in question so as to take the matter out of § 16(b). Our conclusion is that this test is inapplicable on the facts of this case. The transaction in question was no more than a mere sale and purchase. It fits precisely into the design of § 16(b). That design was to take any possible profit away from insiders fitting within the scope of § 16(b). Potter was such an insider.

The possibility of abuse test to be applied under § 16(b) was stated in Blau v. Max Factor & Company, 9 Cir., 1965, 342 F.2d 304, as follows:

"The statutory definitions of 'purchase' and 'sale' are exceedingly general. They are given specificity by measuring questioned transactions against the purpose of section 16(b). Thus, a transaction is held to be a 'purchase' within section 16(b) 'if in any way it lends itself to the accomplishment of what the statute is designed to prevent.' Blau v. Lehman, 286 F.2d 786, 792 (2d Cir. 1960), aff'd 368 U.S. 403, 82 S.Ct. 451, 7 L. Ed.2d 403 (1962). . . . On the other hand, to avoid purposeless harshness, a transaction is held not to be a section 16(b) 'purchase' if it 'was not one that could have lent itself to the practices which Section 16(b) was enacted to prevent.' Ferraiolo v. Newman, 259 F.2d 342, 346 (6th Cir. 1958). . . ."

See also Newmark v. RKO General, Inc., 2 Cir., 1970, 425 F.2d 348, 353; Blau v. Lamb, 2 Cir., 1966, 363 F.2d 507, 516; Bershad v. McDonough, 7 Cir., 1970, 428 F.2d 693, 696–697; Petteys v. Butler, 8 Cir., 1967, 367 F.2d 528.

Facts warranting a defense to a § 16(b) claim must rise above the case of a "garden-variety purchase and sale or sale and purchase within six months. . . ." Abrams v. Occidental Petroleum Corporation, 2 Cir., 1971, 450 F.2d 157, 162. The facts here did not rise above that level.

There are two statements of other courts which are appropriate to the plight of Potter in this case. In Bershad v. McDonough, supra, it was said:

". . . transactions subject to speculative abuses deserve careful scrutiny. . . . The commercial substance of the transaction rather than its form must be considered, and courts should guard against sham transactions by which an insider disguises the effective transfer of stock."

In Newmark v. RKO General, Inc., supra, it was said:

"The threshold issue raised on this appeal is whether the purchase and subsequent exchange of Central shares lent itself to the type of speculative abuse which section 16(b) was de-

signed to prevent. . . . That RKO's heart may have been pure and its motivation noble matters not. The significant factor is whether RKO *could have* reaped a speculative profit from the 'unfair use of information * * * obtained * * * by reason of [its] relationship to [Central].' Securities Exchange Act of 1934, § 16(b), 15 U.S.C. § 78p(b)."

The transaction here fits squarely into the remedial purpose of § 16(b) and there the matter ends if a profit was realized within the meaning of § 16(b) by Potter. We hold that there was.

### IV.

Section 16(b) requires the payment over of any "profit realized". This terminology is sufficiently broad to cover the transaction here in question. Potter realized the profits for the purpose of controlling them for delivery to his designees. The case of Blau v. Lehman, 2 Cir., 1960, 286 F.2d 786, 790–791, is not inapposite. There a partner in a brokerage firm was held liable for his share of profits to his firm from a purchase and sale of corporate stock of a corporation in which he was a director although he waived and disclaimed his share of the profits.

One intent of § 16(b) is to cast the officer-director thereunder into a fiduciary capacity for the benefit of all the shareholders in the corporation. We cannot countenance an effort by such a fiduciary to prefer some stockholders over others through control and designation of profits. On the fiduciary character of the officer-director under the Act, see Smolowe v. Delendo Corporation, 2 Cir., 1943, 136 F.2d 231, 239; Adler v. Klawans, 2 Cir., 1959, 267 F.2d 840, 844; Western Auto Supply Company v. Gamble-Skogmo, Inc., 8 Cir., 1965, 348 F.2d 736, 740. We hold that the language öf·§ 16(b): "any profit realized", embraces the transaction and designation here so as to hold Potter responsible.

### V.

The district court assessed profits on the basis of the market value of the shares acquired from the designees as of February 9, 1970, the date on which Bache paid the designees are made the transfers on its book to reflect the substitution of the stock. Ordinarily the valuation under a § 16(b) recovery is determined by market value. Newmark v. RKO General, Inc., S.D.N.Y., 1969, 305 F.Supp. 310, 315, aff'd, 425 F.2d 348, supra. Here market values are available and the price obtained by Potter is settled. The open question is the date on which the shares were acquired by Potter from the designees. This question of the date of acquisition was not explicated by the district court, doubtless because of the posture in which the case was decided, i. e., on motions for summary judgment by both parties on liability. It is true that Mouldings opted for the date of February 9 in its motion.

After decision for Mouldings, Potter asserted the question of the date being incorrect in a motion for reconsideration. This motion was denied.

The facts indicate that February 9 might or might not be the date of purchase to be applied to the transaction. There are other dates which might as a matter of fact be the date of purchase. We cannot determine the date in the first instance here and we are without findings of fact to support the date selected by the district court.

We vacate the judgment and remand for the limited purpose of the district court determining the correct date. This may be done from the facts already of record, or from the record as supplemented if supplementation seems indicated to the court in its discretion. We intimate no opinion as to which date may be the correct date. Such conclusion as the district court makes with respect to the date must be supported by findings of fact.

Affirmed in part; vacated and remanded in part with direction.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before RIVES, BELL and MORGAN, Circuit Judges.

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.