**Richard MORALES, Plaintiff,**

v.

**ARLEN REALTY & DEVELOPMENT CORP. et al., Defendants.**

**No. 72 Civ. 419.**

United States District Court,
S. D. New York,
Civil Division.

Jan. 9, 1973.

David Lopez, New York City, for plaintiff.

Parker, Chapin & Flattau, New York City, for defendants; Alvin M. Stein, Mark Abramowitz, Ray J. Fleischhacker, New York City, of counsel.

## OPINION

KNAPP, District Judge.

Plaintiff, a stockholder of Arlen Realty and Development Corporation (Arlen), brings this derivative suit against four Arlen directors, Cohen, Levien, Rose and Weissman, to recover short-swing profits under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p. Both sides move for summary judgment on the question of § 16(b) liability, having stipulated pursuant to F.R.Civ.P. 56(c) to sever the issue of damages.

The following facts are undisputed:

Arlen, the corporation here involved, was formed to be the vehicle for the integration of two previously independent enterprises. The first of these was a partnership known as the "Arlen Group", which was engaged in real estate development. Defendants Cohen, Levien and Rose were members of this partnership. The second of these enterprises was Spartans Industries, Inc., whose business was the operation of retail stores and shopping centers. Defendant Weissman was an officer and director of this corporation.

The first step in the planned integration occurred in late 1970, when the members of the "Arlen Group" formed the Arlen Corporation, and defendants Cohen, Levien and Rose became directors of that corporation. The corporation did not then acquire the business of the "Arlen Group" or any assets whatever. On February 26, 1971, the Arlen Group partners transferred the assets of the partnership to the Arlen Corporation in return for shares of its capital stock. On the same day a merger between Spartans and Arlen was completed, and defendant Weissman became a director of Arlen. Thus, all four defendants were directors of Arlen on February 26, 1971.

On that same day, as a result of the foregoing transactions, the four defendants acquired shares of Arlen capital stock in the following amounts; Defendant Cohen, 4,968,220 shares; defendant Levien, 2,365,220 shares, defendant Rose, 355,971 shares; and defendant Weissman, 100,849 shares.

Three days later, on March 1st, defendants Cohen, Levien and Rose privately sold for cash and promissory notes to one Emanuel Klimpl, a former director of Arlen, 38,000, 19,000 and 3,000 shares, respectively, of Arlen common stock.

On the same day, defendant Cohen transferred 250,000 shares of Arlen common to his wife as trustee of five trusts established for their children. It is stipulated that this transfer was for value, and at oral argument it was stated that such "value" consisted of the trustee's promissory notes and that the trusts held no other assets.

On May 10, 1971, defendant Weissman sold 500 shares of Arlen common on the New York Stock Exchange.

Plaintiff claims that each of the above-mentioned transactions came within the purview of § 16(b), and that the Arlen corporation is therefore entitled to recover from each defendant any profit he may have made therefrom. Each defendant concedes he is an "insider" within the meaning of the section. However, defendants severally take the following positions:

(a) Defendants Levien and Rose concede that their acquisitions of the stock as a result of the February 26th integration, were "purchase[s]" within the meaning of § 16(b), but contend that their subsequent sales to another "insider" should not be deemed "sale[s]" within that section.

(b) Defendant Cohen, similarly conceding that his acquisition of Arlen stock was a "purchase", takes the identical position with respect to his sale to the insider Klimpl. In addition, he contends that his transfer of the stock to a trustee for the benefit of his children should not—because of the nature of the transferee—be deemed such a "sale".

(c) Defendant Weissman, conceding that his sale of Arlen stock was covered by the statute, contends that his acquisition of the stock was not a "purchase" within its coverage. In this connection plaintiff does not claim that defendant Weissman had a controlling voice in either Spartans or Arlen at the time of the merger, or that he could have prevented the merger. Other facts relevant to Weissman's acquisition of the stock will be subsequently stated.

For the reasons hereinafter stated, I accept defendant Weissman's contentions, but reject those of the other defendants.

■ Section 16 was enacted by the Congress to deter officers, directors, and beneficial owners of more than ten per cent of any class of the stock of corporations from deriving unfair advantage over other stockholders by virtue of their "insider" status. § 16(a) establishes reporting requirements for insiders. § 16(b) provides in relevant part:

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, . . . shall inure to and be recoverable by the issuer, * * * "

The word "purchase" is defined elsewhere in the Act to include "any con-

tract to buy, purchase, or otherwise acquire", and "sale" is defined to include "any contract to sell or otherwise dispose of". § 3(a)(13), (14), 15 U.S.C. § 78c(a)(13), (14).

The defendants urge that the statute is to be construed with an eye to its stated purpose of preventing the unfair use of "insider" information, rather than applied across the board to all transactions literally covered even if those transactions could not possibly result in the evil the statute seeks to prevent. In support of their interpretation, defendants cite Blau v. Lamb (2d Cir. 1966) 363 F.2d 507. The Court of Appeals there held that a conversion of preferred stock into common stock of the same issuer did not constitute a "sale" within the meaning of § 16(b) because it could not possibly have served as a means for the defendant to have engaged in speculation.

■ In the Blau case, the Court established two basic propositions with respect to the purpose and effect of section 16(b). The first of these propositions is that, impressed by the multitude of ills resulting from "insider" manipulation of corporate stock, the Congress adopted a draconian measure which would in effect make impossible the sale (or purchase) by any insider of stock within six months of its purchase (or sale) by the insider. As applied to "purchases" and "sales" as those terms are ordinarily understood in the law, the Congress allowed no loophole by which the insider could avoid the impact of the statute. In the case of such ordinary purchases and sales, it mattered not to whom, why or how the insider sold (see 363 F.2d at 516). Indeed, as the Court subsequently ruled in Abrams v. Occidental Petroleum Corporation (2d Cir. 1971) 450 F.2d 157, cert granted, Kern County Land Company v. Occidental Petroleum Corporation, 405 U.S. 1064, 92 S.Ct. 1498, 31 L.Ed.2d 793, the only way an insider could avoid the statute was to hold his stock until six months after its

purchase had elapsed. Thus, in *Abrams* the Court observed (450 F.2d at 162):

"In the case of a garden-variety purchase and sale or sale and purchase within six months, . . . the statute operates as a 'crude rule of thumb' . . . . The only way to avoid § 16(b) liability in such cases is to see to it that the matching transaction is postponed beyond the six months period."

■ The second proposition established by *Blau* is that the Congress was not content to limit the reach of the statute to ordinary purchases and sales, but intended to include "conversions, options, stock warranties, reclassifications" and every other sophisticated method by which securities could be acquired or disposed of (363 F.2d at 561). However, with respect to these sophisticated methods—as opposed to ordinary purchases and sales—the Court concluded that the Congress did not intend the statute to apply to situations where the "transaction in question could not possibly [lend] itself to insider abuse" (363 F.2d at 519).

■ Under this authoritative construction of the statute it seems to me that the transactions involving defendants Cohen, Levien and Rose constitute —under the facts as stipulated—ordinary purchases and sales, and that any inquiry as to their purpose or possible effect is irrelevant. Summary judgment is therefore granted in plaintiff's favor against those defendants as to the question of liability.

A different result seems indicated in the case of defendant Weissman. With respect to that defendant, the parties agree that prior to the merger between Spartans and Arlen, defendant Weissman had been an officer, director, and minority stockholder of Spartans, and that as a result of the merger, he received Arlen stock in exchange for his Spartans' holdings on a share-for-share basis, and became a director of Arlen. Plaintiff does not contend that Weissman was either instrumental in planning

or achieving ratification of the merger, or that he had any power to prevent it. Indeed, plaintiff claimed in support of his now moot argument that the acquisitions of Cohen, Levien, and Rose pursuant to the integration constituted "purchase[s]", that those three defendants engineered the merger and formed Arlen to effect it. However, Weissman does not deny that he could have cashed in his Spartans' shares rather than exchange them.

The question is whether the acquisition of stock under these circumstances has the indicia of a "purchase" under § 16(b); viz., whether it entailed the possibility of speculation. While plaintiff urges that Blau v. Mission Corp. (2d Cir. 1954) 212 F.2d 77, Park & Tilford, Inc. v. Schulte (2d Cir. 1947) 160 F.2d 984, and Newmark v. R. K. O. (2d Cir. 1970) 425 F.2d 348, provide the factual paradigms to be followed here, those cases are distinguishable in that defendants in each one were in control of the litigated transactions or of the corporations involved. In my view Ferraiolo v. Newman (6th Cir. 1958) 259 F.2d 342 involved a defendant whose position was more analogous to Weissman's. In that case his conversion of preferred stock to common was held by the then Judge Stewart to not constitute a § 16(b) purchase on the ground that it was, from a practical standpoint, involuntary. The Court acknowledged that defendant could have redeemed his stock at a loss or sold it rather than convert, but stated that ". . . it can hardly be said that a failure to sell is tantamount to a purchase." (at 346)

I find that Weissman's share-for-share exchange of stock has not been shown to have lent itself to the possibility of speculation. In the absence of a showing that he wielded any control over the terms or timing of the Arlen-Spartans merger, his acquisition of Arlen stock pursuant to the merger did not constitute a "purchase" within the meaning of § 16(b). The complaint is accordingly dismissed against Weissman.

So ordered.