Richard MORALES, Plaintiff-Appellant,

v.

MAPCO, INC., and Donald B. Ross, Defendants-Appellees.

No. 75–1414.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 22, 1976.

Decided Aug. 27, 1976.

234

David Lopez, pro se.

R. Thomas Seymour, Tulsa, Okl. (Lawrence T. Chambers, Jr., Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, Okl., on the brief), for defendant-appellee Ross.

Before McWILLIAMS, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is a stockholder's derivative action to recover for defendant Mapco short-swing profits said to have been made by defendant Ross, the financial vice president of Mapco. Suit was brought under § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The district court granted summary judgment for Mapco and Ross. The stockholder appeals. We reverse.

So far as material, § 16(b) provides:

"For the purpose of preventing the unfair use of information which may have been obtained by * * * [an] officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase * * * within any period of less than six months, * * * shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such * * officer in entering into such transaction * * *."

The section specifically authorizes a stockholder's derivative action.

The facts are uncontested. In 1964 Mapco issued warrants which were automatically converted into one-half share of Mapco common stock each on April 1, 1972. Alternatively, one warrant plus $9.00 could be exchanged for one full share of Mapco stock prior to the expiration date. The warrants had an anti-dilution clause whereby the warrant holders were protected against the issuance of Mapco common stock at a consideration of less than $18.00 per share.

Ross acquired 3,616 Mapco warrants, and held them for more than six months. Through his broker Ross disposed of the following warrants on the dates shown:

| Quantity | Date |
| --- | --- |
| 200 | February 28, 1972 |
| 100 | February 29, 1972 |
| 200 | March 6, 1972 |
| 400 | March 9, 1972 |

Additionally, in March Ross sold 200 warrants to a third person and by the payment of $9.00 per warrant, secured 2,516 shares of Mapco common himself.

Mapco common was a listed stock on the New York Stock Exchange. Warrants were sold and bought in the over-the-counter market. On February 28, the date of

the first transaction in question, Mapco common closed at $41.00, and on March 24 at $43.25. The stock reached a high of $52.25 on June 20, 1972.

The stock obtained by the 900 warrants in issue went to the broker in its street name and was sold through the New York Stock Exchange. On the first two transactions, representing a total of 300 warrants, Ross paid to the broker the $9.00 needed to convert each warrant into a full share of common. On the last two transactions, Ross' balance with the broker sufficed to furnish the needed cash. The broker furnished Ross with statements showing the transactions. Ross filed with the Securities and Exchange Commission its Form 4, "Statement of Changes in Beneficial Ownership of Securities," for the months of February and March, 1972. These listed the security as "Warrants: Exercised and Sold as Common," gave the transaction date, and stated the "Amount Sold or otherwise disposed of", as a total of 1100.

■ Section 16(b) declares its purpose to be the prevention of "the unfair use of information" by a statutory insider obtained "by reason of his relationship to the issuer." *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 says that "the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." " '[C]onsiderations of intent, lack of motive, or improper conduct' * * * are irrelevant in § 16(b) suits." Ibid. at 424 n. 4, 92 S.Ct. at 600 n. 4. See also *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 1388–1389 n. 28, 47 L.Ed.2d 668, 686 n. 28; and *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 595, 93 S.Ct. 1736, 36 L.Ed.2d 503.

*Kern County* notes, 411 U.S. at 593, 93 S.Ct. at 1744, that traditional cash-for-stock transactions within the six-month period are within the purview of § 16(b) and comments that "the courts have wrestled with the question of inclusion or exclusion of certain 'unorthodox' transactions." The court lists, Ibid. at n. 24, as unorthodox transactions those "dealings in options, rights, and warrants." We have here an unorthodox transaction.

■ In applying § 16(b) the courts have fluctuated from an objective test to a pragmatic test. Under the objective test a mechanical determination is made of whether the type of transaction or class of investor is wholly within or wholly without the purview of § 16(b). The pragmatic test requires examination of each transaction to determine whether an insider has used an opportunity to profit by undisclosed information. A discussion of the two tests is found in *Kern County,* 411 U.S. at 594 n. 26, 93 S.Ct. 1736. *Kern County* applied the pragmatic test to a merger situation and said that the involuntary nature of the transaction coupled with the absence of speculative abuse resulted in a situation beyond the purview of § 16(b). 411 U.S. at 600, 93 S.Ct. 1736. *Reliance Electric* applied the statute mechanically. It was concerned with a two-step sale, one step of which was without the six months period. 404 U.S. at 424–425, 92 S.Ct. 596.

*Ferraiolo v. Newman,* 6 Cir., 259 F.2d 342, cert. denied 359 U.S. 927, 79 S.Ct. 606, 3 L.Ed.2d 629, involved the conversion of preferred into common stock and, adopting the pragmatic approach, the court held that the transaction was not within § 16(b). The court pointed out equality of treatment, full disclosure, and no material change in proportional equity ownership. Ibid. at 346. It said that the transaction was involuntary because of the possibility of monetary loss, that the transaction had none of the "economic indicia of a purchase", and that the transaction could not have lent itself "to the practices which Section 16(b) was enacted to prevent." Ibid. In *Ferraiolo* the transaction did not require the payment of any money by the holder. Here $9.00 had to be paid with each warrant to get a share of common. The preferred stockholder in *Ferraiolo* had an equity ownership. A Mapco warrant holder had a right to purchase. If the right was not exercised, he received

one-half share of common on the expiration of the warrant. A right to purchase is not the equivalent of ownership of the property subject to the right. The warrant did not give ownership until exercised or terminated.

*Petteys v. Butler,* 8 Cir., 367 F.2d 528, cert. denied 385 U.S. 1006, 87 S.Ct. 712, 17 L.Ed.2d 545 was also concerned with conversion of preferred into common and like *Ferraiolo* is factually distinguishable from the case at bar. Neither *Blau v. Max Factor & Company,* 9 Cir., 342 F.2d 304, cert. denied 382 U.S. 892, 86 S.Ct. 180, 15 L.Ed.2d 150, nor *Blau v. Lamb,* 2 Cir., 363 F.2d 507, cert. denied 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542, had anything to do with transactions in warrants.

*Bershad v. McDonough,* 7 Cir., 428 F.2d 693, cert. denied 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440, was concerned with a stock option which was executed, but not exercised, within the six month period. The court held that the date of execution, rather than the date of exercise, controlled and that the transaction was within the purview of § 16(b). In *Bershad* the parties to the option controlled its terms. The court said that in the circumstances presented "the stock was effectively transferred, for all practical purposes, long before the exercise of the option." Ibid. at 698. In the case at bar, Mapco issued the warrants and controlled the terms. A warrant holder did not have a right to stock before warrant expiration unless he surrendered his warrant and paid $9.00.

*Booth v. Varian Associates,* 1 Cir., 334 F.2d 1, cert. denied 379 U.S. 961, 85 S.Ct. 651, 13 L.Ed.2d 556, was concerned with a transaction in which insiders agreed to exchange or sell stock in one company for stock in another. The transaction was closed in 1962 and within less than six months of the closing date, the insiders sold the stock which they had acquired. The court held the transaction to be within § 16(b). In so doing, it noted that transaction price was the market quotation a day prior to the closing, and said that this feature of the transaction made it "as much as possible *like a market purchase at the time of the closing."* Ibid. at 4. In the instant case the warrant holder could exercise a warrant and pay $9.00 with full awareness of the current market quotations on Mapco stock.

*Kern County* points out, 411 U.S. at 593–594, 93 S.Ct. [1736], at 1744, that the statutory definitions of "purchase" and of "sale" are broad "and, at least arguably, reach many transactions not ordinarily deemed a sale or purchase." See also definitions found at 15 U.S.C. § 78c(a)(13) and (14). Section 16(b) covers either "purchase and sale, or sale and purchase" by an insider within a six-month period. Ross sold stock. Before the sale Ross had purchased the stock by surrendering a warrant and paying $9.00. The stock was held in his broker's street name and sold on the exchange. After the sale he acquired more shares in his own name through the use of the warrants and the payment of $9.00 per share, an event constituting another purchase of stock. The sale also was of stock, not of warrants. It makes no difference whether the purchase occurred before or after the sale. All of the transactions were within the six-month period.

■ Applying the objective test, the result is the same whether the transactions be considered a purchase and sale or a sale and purchase. Ross was an insider and the transactions were within the statutory period. Section 16(b) was enacted to remedy a congressionally recognized abuse of inside information. It should be liberally construed. The statute removes intent from consideration. Ross' protestations of good faith avail nothing. Speculation as to how the transactions might have been handled to avoid the effect of § 16(b) is of no relevance.

The pragmatic test produces the same result. We do not have an exchange of one security for another. The transactions required Ross to make cash payments. The warrants were not the economic equivalent of the stock because the warrants carried no equity ownership but the stock did. Ross was the financial vice-president of

Mapco. The transactions had the possibility of speculative abuse of inside information. Cf. *Kern County,* 411 U.S. 602, 93 S.Ct. 1736, 36 L.Ed.2d 503. That is enough to bring them within § 16(b).

Reversed and remanded for the entry of an appropriate judgment in the light of this opinion.